516

STATE OF HAWAII, Plaintiff-Appellee, *v.* GENE ALBANO, Defendant-Appellant, and ROSE ALBANO, PETER H. FAJARDO, LILY K. FAJARDO, BENJAMIN C. FAJARDO, ROMEO T. BOLOSAN, DELIA C. BOLOSAN, ANDY V. COR-PUZ, PACITA CORPUZ, ROMAN P. BAYAN, SR., JUANITA DOMINGCIL, BELINDA A. TONGSON, JAMIE M. TONG-SON, MONICO V. ACIDO, ANDREA A. MADAMBA, ORLANDO B. VALDEZ, JUN A. SALENDA, SAMUEL J. ATUD, DON D. DULATRE, BEN F. ABENDANIO, BONIE F. ABENDANIO, WILLIAM F. ABENDANIO, NICOMEDES R. JAMORABON, CONCEPCION M. LAZARO, JUANITA C. LAZARO, MATIAS M. VENTURA, JUANA V. VENTURA, SINFRONIO B. ACORDA, FELIX A. DACUYCUY, MARCIAL C. CADELINA, MAGDALENA D. CADELINA, ANDRES M. BARIA, and HENRY A. BATOON, Defendants

NO. 10661

(CR. NO. 58940)

JULY 3, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE TANAKA, IN PLACE OF WAKATSUKI, J., RECUSED

## OPINION OF THE COURT BY NAKAMURA, J

Gene Albano, who was convicted of multiple counts of Election Fraud,[1] asserts on appeal that the Circuit Court of the First Circuit erred when it denied his motion to dismiss the indictment. He argues the pertinent provisions of our election laws were not enforceable through criminal prosecution because they were amended after November 1, 1964, but had not been submitted to the Attorney General of the United States for preclearance as required by the Voting Rights Act of 1965. Concluding from a review of the record, the Voting Rights Act, and the relevant provisions of our election laws that his contentions lack merit, we affirm the convictions.

I.

The offenses for which Gene Albano stands convicted were committed in the late summer and early autumn of 1982 while he was a candidate for reelection to the State Legislature as the representative from the 26th Representative District. The election fraud perpetrated by Albano involved the registration of persons who did not reside in the

---

[1] A typical count in the indictment was couched in the following language:

COUNT I: During the period from August 1, 1982 to and including October 10, 1982, the exact dates being unknown to the Grand Jury, GENE ALBANO did wilfully commit the following acts within the City and County of Honolulu, State of Hawaii:

1. On or about [relevant date], the exact date being unknown to the Grand Jury, Defendant ALBANO did approach [affiant], and, utilizing an Affidavit on Application for Voter Registration in which had been filled an address which was not the residence of said [affiant], did cause said [affiant] to sign the voter affirmation at item 9 of said Affidavit

2. Defendant ALBANO did cause Laura E. DeFiesta, while acting in her capacity as a public officer, to wit, Deputy Registrar pursuant to Section 11-15(e) of the Hawaii Revised Statutes and whose conduct Defendant ALBANO was legally accountable for under Section 702-221(2)(a) of the Hawaii Revised Statutes, to affix her signature to the Deputy Registrar signature line at item 11 of the Affidavit on Application for Voter Registration signed by said [affiant] out of the presence of Laura E. DeFiesta and to file the said Affidavit with the City Clerk of the City and County of Honolulu, State of Hawaii.

Such actions constituted wilful violation and wilful hindering of the objectives of Section 11-15 of the Hawaii Revised Statutes, a law concerning elections, and therefore, GENE ALBANO committed the offense of Election Fraud in violation of Section 19-3(8) of the Hawaii Revised Statutes.

26th Representative District as qualified electors entitled to vote there.[2]

Rose Albano and Laura Di Fiesta, who were deputized as voter registrars by the Clerk of the City and County of Honolulu, affixed their signatures as registrars to a number of blank applications for registration.[3] Gene Albano then filled in the information needed to complete the applications, which were in the form of an affidavit, and presented the

---

[2]Hawaii Revised Statutes (HRS) § 11-12 (Supp. 1984) does not permit a person to register and vote in a representative district other than that in which he resides. Voters are required to register and vote in the precinct of the district in which they maintain their residences.

[3]HRS § 11-15 (Supp. 1984) requires an applicant for registration as a voter to "make and subscribe to an application in the form of an affidavit." Section 11-15 in relevant part provides:

Application to register. (a) Any person qualified to and desiring to register as a voter in any county, may present himself at any time during business hours to the clerk of the county, then and there to be examined under oath as to his qualifications as a voter. Each applicant shall make and subscribe to an application in the form of an affidavit.

The affidavit shall contain the following information:

(1) Name;
(2) Social security number;
(3) Date of birth;
(4) Residence, including mailing address;
(5) That the residence stated in the affidavit is not simply because of the person's presence in the State but that the residence was acquired with the intent to make Hawaii the person's legal residence with all the accompanying obligations therein;
(6) That the person is a citizen.

.    .    .    .

(c) The applicant shall swear to the truth of the allegations in his application before the clerk, who is authorized to administer oaths. Unless contested by a qualified voter, the clerk may accept, as prima facie evidence, the allegation of the applicant in information required in the affidavit in item 5 of subsection (a), and the allegation of the applicant that he is Hawaiian required in subsection (b). In any other case where the clerk shall so desire or believe the same to be expedient, he may demand that the applicant furnish substantiating evidence to the allegations of his application.

(d) If the clerk is satisfied that the applicant is entitled to be registered as a voter, the applicant shall then affix his signature to the affidavit and the clerk shall affix his signature; or the clerk shall enter "Unable to sign" and the reason in the space for the applicant's signature. A voter having once been registered shall not be required to register again for any succeeding election, except as hereinafter provided. The affidavits so approved or accepted by the clerk shall thereupon be numbered appropriately, filed by the clerk and kept in some convenient place so as to be open to public inspection and examination.

affidavits to forty-four prospective voters for signature. The residence addresses on the applications were for dwelling places within the 26th Representative District, but none of the forty-four approached for signatures resided there. Thirty-one of them signed the affidavits containing false information, but thirteen were either reluctant or unable to do so. Albano forged the signatures of the thirteen and caused the forty-four completed applications to be filed with the Clerk of the City and County, who placed the names of the applicants-affiants on the voting register as electors qualified to vote in the 26th District.

Gene Albano, Rose Albano, and the thirty-one voters who affixed their signatures to the falsified affidavits were indicted on June 30, 1983 on ninety counts of Election Fraud. The gravamen of the charges against Albano was that he caused others to breach the registration procedures prescribed by HRS § 11-15 and he was legally accountable for their conduct pursuant to HRS § 702-221(2)(a).[4] Albano's conduct, in the Grand Jury's view, violated HRS § 19-3(8) and constituted Election Fraud.[5] An amended indictment was returned by the Grand Jury on November 8, 1984, and Albano was charged with additional counts of Election Fraud. He moved to dismiss the indictment on the ground that the underlying statutory provisions were fatally flawed by vagueness, but the trial court denied the motion. Reviewing the indictment upon the trial court's allowance of an interlocutory appeal, we found a clause in HRS § 19-3(8) was indeed vague and could not pass

---

[4]HRS § 702-221(2)(a) (1976) reads:
Liability for conduct of another.

. . . . .

(2) A person is legally accountable for the conduct of another person when:
(a) Acting with the state of mind that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct .

[5]HRS § 19-3(8) (1976) reads:
Election frauds. The following persons shall be deemed guilty of an election fraud:

(8) Every public officer by law required to do or perform any act or thing with reference to any of the provisions in any law concerning elections contained, who wilfully fails, neglects, or refuses to do or perform the same, or who wilfully performs it in such a way as to hinder the objects thereof, or who is guilty of any wilful violation of any of the provisions thereof.

constitutional muster. *See State v. Albano,* 67 Haw. 398, 403, 688 P.2d 1152, 1156 (1984). We therefore ordered that the portions of the offenses premised on the clause be stricken. We further found other counts defective for other reasons and dismissed them. But since the remainder of the indictment was not afflicted with infirmities, we affirmed the denial of the motion.

Albano sought dismissal of what remained of the indictment on another ground when the case was remanded. HRS §§ 11-5 and 19-3(8), he claimed, were unenforceable in 1982 because the provisions had been amended after the passage of the Voting Rights Act yet approval of the amendments by the United States District Court for the District of Columbia or the Attorney General had not been sought before the amended provisions were enforced. He argued the failure of the State or City to seek the necessary court approval or administrative clearance rendered the indictment ineffectual.

The State acknowledged that the Voting Rights Act of 1965 called for federal approval of election law amendments. But it asserted preclearance was not required in this instance because the pertinent provisions had not been altered in substance. Even if clearance were required, the State argued, it was obtained in 1981. And the State further maintained the United States District Court for the District of Columbia on July 31, 1984 found the election laws of the State of Hawaii harbored no provision at odds with the federal law during the relevant time span. The declaratory judgment, the State claimed, served to validate the statutory provisions in question.[6]

---

[6]The federal court judgment declared in part:

1. During the nineteen years preceding the filing of this action, no test or device, as defined in 42 U.S.C. § 1973b(c) (1976), has been used in the City and County of Honolulu, Hawaii, for the purpose or with the effect of denying or abridging the right to vote on account of race or color;

2. During the nineteen years preceding the filing of this action, no court of the United States has entered a final judgment determining that any denials or abridgments of the right to vote on account of race or color have occurred anywhere in the territory of the City and County of Honolulu, Hawaii, through the use of any test or device[.]

The trial court denied the motion,[7] and Albano proceeded to trial.[8] But he chose not to be tried by a jury; instead, he agreed with the State to submit the case to the court for decision upon stipulated facts and exhibits. The court found Albano guilty of forty-four counts of Election Fraud and imposed sentences of imprisonment for five years on each count, to be served concurrently.

## II.

Albano's thesis on appeal is that HRS §§ 11-15 and 19-3(8), whose strictures purportedly served as the basis of the prosecution, were "null and void" and could not support the accusation of election fraud because the City and County of Honolulu, the political subdivision of the State in which the election fraud allegedly was perpetrated, failed to comply with mandates of the Voting Rights Act of 1965[9] relating to changes effected in state election laws subsequent to November 1, 1964. We begin our analysis by examining the purpose and the relevant portions of the federal law upon which he relies.

## A.

The Voting Rights Act "implemented Congress' firm intention to rid the country of racial discrimination in voting." *Allen v. Board of Elections,* 393 U.S. 544, 548 (1969). "The heart of the Act is a complex scheme of stringent remedies" designed to abolish and prevent the reinstitution of practices that were employed to deny citizens the right to vote. *South Carolina v. Katzenbach,* 383 U.S. 301, 315 (1966). "Section 4(a)-(d) [of the Act] lays down a formula defining the States and political subdivisions to which these . remedies apply." *Id.* Section 5 man-

---

[7]The trial court denied the motion on the following grounds: 1) HRS §§ 11-15 and 19-3 did not require preclearance, 2) HRS § 11-15 was approved by the Attorney General on November 30, 1981, and 3) the order of the United States District Court for the District of Columbia of July 31, 1984 retroactively validated Hawaii's election laws. Thus, the court concluded the laws were valid and enforceable despite Albano's contentions.

[8]Albano was the sole defendant who proceeded to trial before the trial court. The charges against Rose Albano were dismissed by this court, and the counts charging the other defendants were disposed of before Albano was tried.

[9]42 U.S.C. §§ 1973a-1973c (1982 & Supp. 1984).

dates that whenever a State or political subdivision subject to these remedial provisions enacts "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1964," it must either seek and receive a declaratory judgment in the United States District Court for the District of Columbia that the enactment "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color" or submit the enactment to the Attorney General of the United States for preclearance before such changes may be enforced. 42 U.S.C. § 1973c (1982).[10] The City and County of Honolulu fell within the definition of states and political subdivisions subject to the remedial provisions when the Voting Rights Act was passed and when the alleged election fraud occurred.[11]

---

[10]42 U.S.C. § 1973c, in relevant part, reads:

Whenever a State or political subdivision [covered by this Act] shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 . . . such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2), and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the [same] has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has affirmatively indicated that such objection will not be made . . . .

[11]The City and County came within the definition because the Hawaii Constitution, on November 1, 1964, contained a requirement that "[n]o person shall be qualified to vote unless he is also able, except for physical disability, to speak, read and write the English or Hawaiian language," Hawaii Const. art II, § 1 (RLH Supp. 1963), and HRS § 11-8 contained provisions implementing the offending constitutional provision. The City and County was also subject to the remedial provisions of the Act because on November 19, 1965, the Director of the Census determined that "less than 50 percentum of the persons of voting age [who resided in Honolulu] voted in the presidential election of 1964." 30 Fed. Reg. 14505 (1965). Its coverage thereunder was terminated on July 31, 1984 pursuant to a procedure provided by § 4(a) of the Act. This so-called "bailout" provision allows a covered jurisdiction to free itself of the preclearance requirement by bringing a declaratory action before a three-judge panel of the United States District Court for the District of

B.

Turning to Albano's argument that the City and County's noncompliance with section 5 of the Voting Rights Act rendered the accusation against him a nullity, we are struck by the anomaly of one accused of falsifying residence addresses of prospective electors seeking refuge in the remedial provisions of a law designed to "banish the blight of racial discrimination in voting." *South Carolina v. Katzenbach,* 383 U.S. at 308. Albano does nothing to dispel our doubt that section 5 affords him protection; he does not direct us to a prior case where a defendant in a criminal case escaped prosecution because of the prosecuting authority's noncompliance with the section.

Still, the Supreme Court has said Congress intended "to give the Act the broadest possible scope," *Allen v. Board of Elections,* 393 U.S. at 567, those states and political subdivisions subject to the remedial provisions must "submit any proposed change affecting voting, for preclearance by the Attorney General or the District Court for the District of Columbia," *Dougherty County Board of Education v. White,* 439 U.S. 32, 34 (1978), and "Congress intended to reach any state enactment which alter[s] the election law of a covered [jurisdiction] in even a minor way." *Allen v. Board of Elections,* 393 U.S. at 566. Moreover, the Supreme Court has also said "[n]othing in [the Act] negates the presumption that, at least when the issue arises collaterally, state courts may decide whether a proposed change in election procedures requires preclearance under § 5." *Hathorn v. Lovorn,* 457 U.S. 255, 268 (1982). And the Court in *Hathorn* held "that the Mississippi courts had the power [and a duty] to decide whether § 5 applied to [a proposed] change" in election procedures. 457 U.S. at 269. In light of these pronouncements we would not be so bold as to summarily dismiss Albano's contentions despite the incongruity noted above, and we examine the indictment and relevant portions of the election laws to determine whether preclearance was indeed a prerequisite for enforcement as urged.

---

Columbia and proving that during the five years preceding the filing of the action no test or device has been used in the jurisdiction for the purpose or with the effect of denying or abridging the right to vote on account of race or color. The City and County was granted the exemption it sought. *See supra* note 6.

In the counts of the indictment upon which Albano was tried, the offenses are summed up with a statement that his "actions constituted wilful violation . . . of Section 11-15 of the Hawaii Revised Statutes, a law concerning elections, and therefore, GENE ALBANO committed the offense of Election Fraud in violation of Section 19-3(8) of the Hawaii Revised Statutes."[12] The question then is whether the pertinent provisions of HRS §§ 11-15 and 19-3(8) were altered between November 1, 1964 and August of 1982 or not. Since it is the section that marks the boundaries of criminal conduct where elections are concerned, we look first at § 19-3(8) and its history.

C.

On November 1, 1964 the crime of Election Fraud was described and delineated in Revised Laws of Hawaii 1955 (RLH) § 11-211. Section 11-211(j) (Supp. 1963) then read:

The following persons shall be deemed guilty of an election fraud:

. . . .

(j) Every public officer by law required to do or perform any act or thing with reference to any of the provisions in any law concerning elections contained, who wilfully fails, neglects or refuses to do or perform the same, or who wilfully performs it in such a way as to hinder the objects thereof, or who is guilty of any wilful violation of any of the provisions thereof.

RLH § 11-211(j) was recodified in 1968 without alteration in form or substance as HRS § 18-2(10). Two years later, the legislature found "a thorough revision of the election laws of the State and county [was] necessary" because of "the initiation of new voting systems, new parties, a rapidly increasing and mobile population, and actions of the 1968 Constitutional Convention." Session Laws of Hawaii (SLH) 1970, act 26, § 1. Yet the language of § 18-2(10) emerged from the process of repeal, reenactment, and renumbering without change. What was then designated as HRS § 18-2 is now HRS § 19-3(8), but in wording § 19-3(8)

---

[12]These counts originally contained statements that Albano's "actions constituted wilful violation and wilful hindering of the objectives of Section 11-15 of the Hawaii Revised Statutes." But as noted earlier, the language charging the defendant with "wilful hindering of the objectives of Section 11-15" was stricken.

 

is no different from RLH § 11-211(j). We therefore conclude preclearance was not a prerequisite for the enforcement of HRS § 19-3(8), and turn to HRS § 11-15.

Inasmuch as the election fraud here involved the falsification of residence addresses, we focus on the provisions of HRS § 11-15 covering affidavits of application and information on residence addresses. We learn that on November 1, 1964, these provisions were part of RLH § 11-8 (Supp. 1963), which in pertinent part read:

> Any person qualified to and desiring to register as an elector in any county, may present himself at any time during business hours to the clerk of the county, then and there to be examined under oath as to his qualifications as an elector. Each applicant shall make and subscribe to an application in substantially the following form:
>
> AFFIDAVIT ON APPLICATION FOR REGISTRATION.
> No . . . . .
> State of Hawaii )
> County of      ) ss
>   1. My full name is . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . .
>   2. I was born at . . . . . on the . . . . . day of . . . . . in the year .  . . .
>   3. My age is . . . years.  4. I reside at . . . . . . . .  .
>
> .    .    .    .
>
> . . . The applicant shall swear to the truth of the allegations in his application before the clerk . . . .

RLH § 11-8 was repealed, reenacted with slight wording changes, and redesignated as HRS § 11-4 in 1968. The pertinent part of the section then read:

> Any person qualified to and desiring to register as an elector in any county, may present himself at any time during business hours to the clerk of the county, then and there to be examined under oath as to his qualifications as an elector. Each applicant shall make and subscribe to an application in substantially the following form:
>
> AFFIDAVIT ON APPLICATION FOR REGISTRATION.
> No. . . . . .
> State of Hawaii )
> County of      ) ss.
>   1. My full name is . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>   2. I was born at . . . . . on the . . . . . day of . . . . . in the year . . . . .
>   3. My age is . . . years.  4. I reside at . . . . . . . . . . . . . . . . .
>
> .    .    .    .

The applicant shall strike out allegations that are inapplicable. If it appears from the application that the applicant has attained the age qualifying him to vote, he shall not be required to furnish the date of his birth or his exact age, but if necessary to a determination of the qualifications of the applicant to vote in the next election (primary or general) he shall furnish the date of his birth. The applicant shall swear to the truth of the allegations in his application before the clerk, who is authorized to administer oaths.

HRS § 11-4 (1968).

The "thorough revision of the election laws" in 1970 caused HRS § 11-4 to be redesignated as § 11-15, but with only minor language changes. And the relevant portion of § 11-15 now reads:

Application to register. (a) Any person qualified to and desiring to register as a voter in any county, may present himself at any time during business hours to the clerk of the county, then and there to be examined under oath as to his qualifications as a voter. Each applicant shall make and subscribe to an application in the form of an affidavit.

The affidavit shall contain the following information:

(1) Name;
(2) Social security number;
(3) Date of birth;
(4) Residence, including mailing address;

.   .   .   .

(c) The applicant shall swear to the truth of the allegations in his application before the clerk, who is authorized to administer oaths.

HRS § 11-15 (Supp. 1984).

A careful reading of the foregoing provisions reveals there were minor language changes effected between November 1, 1964 and the date of the offenses. But the requirement that a prospective voter state his residence address in his affidavit of application has not been altered since November 1, 1964, and the Voting Rights Act thus posed no impediment to the enforcement of HRS § 11-15.

The judgment of the Circuit Court of the First Circuit is affirmed.[13]

---

[13]In view of our conclusion that preclearance was not a prerequisite to the enforcement of HRS §§ 19-3(8) and 11-15, we do not find it necessary to discuss the other issues raised by the defendant.

*David C. Schutter* (*Jerel D. Fonseca* with him on the briefs; *Schutter, Cayetano & Playdon,* of counsel) for appellant. ,

*Peter Van Name Esser,* Deputy Prosecuting Attorney, for appellee.