STATE OF HAWAII, Plaintiff-Appellee, *v.* BRIAN KAM, Defendant-Appellant

NO. 11861

(CASE NO. 29A of 9/22/86)

AND

STATE OF HAWAII, Plaintiff-Appellee, *v.* DEBORAH COHEN, Defendant-Appellant

NO. 11949

(CASE NO. 33A of 9/22/86)

JANUARY 8, 1988

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, JJ.,
AND INTERMEDIATE COURT OF APPEALS
ASSOCIATE JUDGE HARRY T. TANAKA,
IN PLACE OF NAKAMURA, J., RECUSED

OPINION OF THE COURT BY HAYASHI, J.

Defendants-Appellants Brian Kam and Deborah Cohen (collectively "Appellants") appeal their convictions for promoting pornographic adult magazines under Hawaii Revised Statutes (hereinafter "HRS") § 712-1214(1)(a) (1985).[1] At trial, Appellants had

---

[1] In an earlier appeal, we vacated Appellants' convictions because of the trial court's failure to render instructions on the necessity for the jury to determine the prevailing community standards on obscenity. Appellants had also challenged the constitutionality of HRS § 712-1214(1)(a) on vagueness, overbreadth, and privacy grounds, but we declined to rule on those issues then and instead remanded the case for a new trial. See State v. Kam, 68 Haw. ___, 726 P.2d 263 (1986).

presented experts plus public opinion surveys to prove that the magazines were not obscene, but Plaintiff-Appellee State of Hawaii (hereinafter "State") had introduced only the magazines to show that the explicit sexual content was pornographic. Appellants contend that 1) HRS § 712-1214(1)(a) A) is unconstitutionally vague and/or overbroad, and B) violates the Hawaii Constitution's right to privacy; plus 2) State was required, but failed, to submit expert testimony with surveys to rebut the defense evidence that the magazines were not obscene. We agree that HRS § 712-1214(1)(a) infringes on the right to privacy and therefore reverse the convictions.

## I.

### BACKGROUND FACTS.

The facts are not disputed. In the downtown Lido Bookstore, clerk Brian Kam sold an adult magazine to an undercover policeman. Kam knew the sexual content of the magazine and was subsequently arrested. Similarly, clerk Deborah Cohen was arrested for selling another adult magazine in the Wahiawa Adult Bookstore to another undercover policeman. Various pretrial motions were later filed in both cases.

State first moved to exclude all defense surveys on public opinion about sexually explicit material by asserting that polls were inaccurate, biased, and inadmissible hearsay. Appellants replied that expert testimony explaining surveys are valid barometers of public opinion on the community standards about what constitutes pornography.

Appellants next sought to dismiss the complaint on the grounds that HRS § 712-1214(1)(a) 1) violates the right to privacy of the Hawaii Constitution article I, section 6; and 2) is overbroad and/or vague. State responded that 1) the motion was untimely; 2) obscene items have no constitutional protection; 3) the right to privacy does not apply to the commercial sale of pornography; and 4) the statute was valid.

The trial court denied the parties' motions, and the cases proceeded to a consolidated bench trial. There, however, a controversy arose over the necessity of public opinion surveys, supported by Appellants argued that State, as part of its prosecutorial burden,

was required to submit public opinion surveys plus expert tes-expert testimony, to establish the prevailing community standards. timony to prove the adult magazines violated the accepted community standards and were patently offensive. State answered that 1) the trial court, as the sole trier of fact, could review the materials in question to determine their legality based on its (the trial court's) knowledge of community standards; and 2) no prosecutorial burden to submit surveys or expert testimony existed.

The trial court first ruled that the magazines were pornographic, patently offensive, plus violated the prevailing community standards. It then held that neither surveys nor expert testimony was necessary to decide the case and thus convicted Appellants.

After sentencing, separate appeals followed. We afterwards ordered consolidation.

## II.

### QUESTIONS PRESENTED.

We will answer the issues posed in the following order:

1. Whether HRS § 712-1214(1)(a) is unconstitutionally overbroad and/or vague?   NO.

2. Whether Appellants possess the standing to assert the privacy rights of their customers to purchase sexually explicit adult materials?   YES.

3. Whether HRS § 712-1214(1)(a) infringes on the right to privacy in the Hawaii Constitution article I, section 6?   YES.

We decline to address the other issues in this appeal.

## III.

### STATUTORY OVERBREADTH AND/OR VAGUENESS.

Though inarticulately posed, Appellants' first contention is that HRS § 712-1214(1)(a) is overbroad and/or vague. State counters that the statute is not constitutionally infirm, overbroad, or vague.

The relevant statutes read:

§ *712-1214 Promoting pornography.* (1) A person commits the offense of promoting pornography if, knowing its content and character, he:

(a) Disseminates for monetary consideration any porno-
graphic material . . . .

§ *712-1210 Definitions of terms in this part.* In this part, unless
a different meaning is required:

. . . .

(6) "Pornographic." Any material or performance is "por-
nographic" if all of the following coalesce:
(a) The average person, applying contemporary com-
munity standards would find that, taken as a whole, it
appeals to the prurient interest.
(b) It depicts or describes sexual conduct in a patently
offensive way.
(c) Taken as a whole, it lacks serious literary, artistic,
political, or scientific merit.

A penal statute is vague if a person of ordinary intelligence cannot
obtain an adequate description of the prohibited conduct or how to
avoid committing illegal acts. *State v. Albano,* 67 Haw. 398, 688 P.2d
1152 (1984), *appeal after remand,* 68 Haw. ____, 722 P.2d 453
(1986); *see State v. Bloss,* 64 Haw. 148, 637 P.2d 1117 (1981), *cert.
denied,* 459 U.S. 824 (1982). Overbreadth occurs if the disputed
statute proscribes illegal as well as protected First Amendment
conduct. *State v. Bumanglag,* 63 Haw. 596, 634 P.2d 80 (1981).

The regulatory scheme under HRS §§ 712-1210 to 712-1214
(1985) conforms to the standards set by the United States Supreme
Court in *Miller v. California,* 413 U.S. 15, *reh'g denied,* 414 U.S. 881
(1973). *Miller* held that obscenity is not protected by the First
Amendment and defined the constitutional parameters into which
a state's statutory regulation must fit. 413 U.S. at 23-24. It follows
that those statutes which meet the requirements of *Miller* will not
infringe on any constitutionally protected rights under the First
Amendment. HRS § 712-1210(6) recites the three-prong test estab-
lished in *Miller.*

We had the opportunity to specifically address this constitu-
tional issue in *State v. Manzo,* 58 Haw. 440, 573 P.2d 945 (1977),
which adopted the reasoning of *Miller:*

[N]either the First Amendment nor Article I, Section 3 of the
Hawaii Constitution protects the conduct charged by the com-
plaint. We interpret Article I, Section 3 of the Hawaii Constitu-

tion as excluding obscenity from protected speech. We construe [the statutory definition] to incorporate those limitations upon its definition of pornographic materials and performances which the Supreme Court has prescribed as requisite under the First Amendment. We find that the statute under which Appellant was charged, as so construed, is *not facially unconstitutional for overbreadth under either the First Amendment or Article I, Section 3 of the Hawaii Constitution, and is not void for vagueness.*

58 Haw. at 444, 573 P.2d at 949 (emphasis added).

Therefore, the constitutionality of HRS § 712-1214(1)(a) has been firmly established pursuant to a free speech analysis, and hence is not overbroad or vague under the First Amendment. *See State v. Shingaki,* 65 Haw. 116, 648 P.2d 190 (1982). HRS § 712-1214(1)(a), however, was not then subjected to a right to privacy scrutiny.

IV.

*APPELLANTS' STANDING TO ASSERT THE PRIVACY RIGHTS OF THOSE PERSONS WHO WISH TO READ OR VIEW PORNOGRAPHIC MATERIAL.*

Before addressing the merits of the right to privacy controversy, we must first, *sua sponte,* decide whether Appellants, as sellers of pornographic items, possess the standing to assert the privacy rights of those persons who wish to buy those items to read or view in the privacy of the home. Although the question of standing "was not raised by the parties, appellate courts are under an obligation to insure that they have jurisdiction to hear and determine each case." State v. Moniz, 69 Haw. ____, ____, 742 P.2d 373, 375 (1987).

In *Eisenstadt v. Baird,* 405 U.S. 438 (1972), the United States Supreme Court held that a distributor of contraceptives, who had been convicted of violating a state law restricting the dissemination of contraceptive products, had the standing to assert the rights of unmarried persons who had been denied access to contraceptives. The Court ruled that enforcement of the disputed statute "materially impair[ed] the ability of single persons to obtain contraceptives." *Id.* at 446. By analogy, implementing HRS § 712-1214(1)(a)

against the sellers of pornography severely reduces the ability of persons to read or view pornographic material in the privacy of the home.

The Court further observed that the case for standing was especially strong because those especially aggrieved by the law in question, the single persons seeking contraceptives, were not normally subject to prosecution so had no forum to challenge the law. *Eisenstadt,* 405 U.S. at 446. Similarly the buyers of pornography (i.e. Appellants' customers) are usually never charged with violating HRS § 712-1214(1)(a) so cannot generally raise the privacy issue.

Accordingly, we decide that Appellants possess the requisite standing to assert the constitutional privacy rights of the buyers of pornographic material. *Compare State v. Narvaez,* 68 Haw. ____, 722 P.2d 1036 (1986) (a defendant has no vicarious standing to contest the constitutionality of a co-defendant's coerced confession).

V.

*RIGHT TO PRIVACY.*

Appellants next maintain that HRS § 712-1214(1)(a) infringes on the right to privately own sexually explicit material by making it impossible for persons to buy pornographic items. State responds that promoting pornography is not sanctioned by any privacy right. To adequately understand this issue we must initially discuss A) the United States Supreme Court pronouncements on this subject; then B) the legislative history and scope of the Hawaii Constitution article I, section 6; and lastly C) the applicability of the privacy provision to the case at bar.

A.

*UNITED STATES SUPREME COURT CASELAW.*

The materials in question, were found to be "pornographic" pursuant to the *Miller* three-prong statutory test. State, however, would not be able to prohibit an individual from possessing and viewing such pornographic materials in the privacy of his or her own home. *Stanley v. Georgia,* 394 U.S. 557 (1969). Herein lies the

paradoxical conflict. Is an individual's fundamental privacy right to own and view pornographic material violated when he or she is effectively denied the right to obtain such material (since generally, pornography is bought for private use at home)? This is the threshold issue of this appeal. The question is what should take precedence: State's police power to regulate obscene material versus an individual's fundamental privacy right to have pornography at home?

The United States Supreme Court has effectively ruled "that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others." *United States v. 12 200-Ft. Reels of Super 8mm Film,* 413 U.S. 123, 128 (1973). Furthermore, *United States v. Orito,* 413 U.S. 139, 143-44 (1973) held that (emphasis added):

> Congress may regulate on the basis of the natural tendency of material in the home being kept private and the contrary tendency once material leaves that area, regardless of a transporter's professed intent. Congress could reasonably determine such regulation to be necessary to effect permissible *federal control of interstate commerce* in obscene material, based as that regulation is on a legislatively determined risk of ultimate exposure to juveniles or to the public and the harm that exposure could cause.

*See United States v. Reidel,* 402 U.S. 351 (1971).

Significantly, however, the above reasoning has engendered substantial controversy and numerous dissents. *See e.g., Hamling v. United States,* 418 U.S. 87, 141 (Brennan, J., dissenting, joined by Stewart, J., and Marshall, J.), *reh'g denied,* 419 U.S. 885 (1974); *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 379 (Black, J., dissenting), *reh'g denied,* 403 U.S. 924 (1971); *see also Smith v. United States,* 431 U.S. 291, 311 (1977) (Stevens, J., dissenting). That is, since the "government may not constitutionally criminalize [the] mere possession or sale of obscene literature, absent some connection to minors, or obtrusive display to unconsenting adults[,]" the government cannot prosecute the sellers of pornography. *Pope v. Illinois,* 481 U.S. \_\_\_\_, \_\_\_\_, 107 S. Ct. 1918, 1927, 95 L. Ed. 2d 439, 452 (1987) (Stevens, J., dissenting, joined by Marshall, J., and Brennan, J., in part).

The *Pope* dissent further explained:

> The Court has adopted a restrictive reading of *Stanley*, opining that it has no implications to the criminalization of the sale or distribution of obscenity. But such a crabbed approach offends the overarching First Amendment principles discussed in *Stanley*, almost as much as it insults the citizenry by declaring its right to read and possess material which it may not legally obtain. In *Stanley*, the Court recognized that there are legitimate reasons for the state to regulate obscenity: protecting children and protecting the sensibilities of unwilling viewers. But surely a broad criminal prohibition on all sale of obscene material cannot survive simply because the state may constitutionally restrict public display or prohibit sale of the material to minors.

*Id.* at ____, 107 S. Ct. at 1930, 95 L. Ed. 2d at 456 (citations and footnote omitted) (Stevens, J., dissenting).

The United States Supreme Court caselaw is premised on the First Amendment. The Hawaii Constitution article I, section 6, though, affords much greater privacy rights than the federal right to privacy, so we are not bound by the United States Supreme Court precedents. *See State v. Henry*, 302 Or. 510, 732 P.2d 9 (1987) (the Oregon Supreme Court interprets the state constitutional free speech provision to preclude laws prohibiting the distribution of pornography). As the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawaii Constitution, we are free to give broader privacy protection than that given by the federal constitution. *See State v. Kim*, 68 Haw. ____, 711 P.2d 1291 (1985); *State v. Wyatt*, 67 Haw. 293, 687 P.2d 544 (1984); *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974); *see also State v. Enos*, 68 Haw. ____, 720 P.2d 1012 (1986).

### B.

#### LEGISLATIVE HISTORY AND SCOPE OF THE HAWAII CONSTITUTION ARTICLE I, SECTION 6.

The Hawaii Constitution article I, section 6 reads (emphasis added):

> The right of the people to privacy is recognized and shall not be infringed *without the showing of a compelling state interest.*

The legislature shall take affirmative steps to implement this right.

The Hawaii Constitution must be construed with due regard to the intent of the framers and the people adopting it. *State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982). The fundamental principle in interpreting a constitutional provision is to give effect to that intent. *Huihui v. Shimoda,* 64 Haw. 527, 644 P.2d 968 (1982); *State v. Kahlbaun,* 64 Haw. 197, 638 P.2d 309 (1981); *State v. Miyasaki,* 62 Haw. 269, 614 P.2d 915 (1980).

The privacy provision was drafted by the 1978 Constitutional Convention and incorporated into the Hawaii Constitution by the general election of that year. The Convention's Committee on Bill of Rights, Suffrage and Elections recommended passage of the proposed article I, section 6 by stating that:

Perhaps the most important aspect of privacy is that it confers upon people the most important right of all — the right to be left alone. As Justice Brandeis said in his now celebrated and vindicated dissent in *Olmstead v. U.S.,* 277 U.S. 438 (1928):

"The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone — the most comprehensive of rights and the right most valued by civilized men."

*It gives each and every individual the right to control certain highly personal and intimate affairs of his own life. The right to personal autonomy, to dictate his lifestyle, to be oneself are included in this concept of privacy.* As Justice Abe stated in his concurring opinion in *State v. Kantner,* 53 H. 327, 493 P 2d 306 (1972): each person has the "fundamental right of liberty to make a fool of himself as long as his act does not endanger others, and that the state may regulate the conduct of a person under pain of criminal punishment only when his actions affect the general welfare — that is, where others are harmed or likely to be harmed."

. . . .

It should be emphasized that this right is not an absolute one but, because similar to the right of free speech, *it is so important in value to society that it can be infringed upon only by the showing of a compelling state interest. If the State is able to show a compelling state interest, the right of the group will prevail over the privacy rights or the right of the individual.* However, in view of the important nature of this right, the State must use the least restrictive means should it desire to interfere with the right.

Stand. Comm. Rep. No. 69, in 1 Proceedings of the Constitutional Convention of Hawaii of 1978, at 674-75 (1980) (emphasis added).

After extensive debates, the Convention's Committee of the Whole adopted the proposal and concluded that:

this privacy concept encompasses the notion that in certain highly personal and intimate matters, the individual should be afforded freedom of choice absent a compelling state interest. This right is similar to the privacy right discussed in cases such as *Griswold v. Connecticut,* 381 U.S. 479 (1965). *Eisenstadt v. Baird,* 405 U.S. 438 (1972), *Roe v. Wade,* 410 U.S. 113 (1973), etc. It is a right that, though unstated in the federal Constitution, emanates from the penumbra of several guarantees of the Bill of Rights. Because of this, there has been some confusion as to the source of the right and the importance of it. As such, *it is treated as a fundamental right subject to interference only when a compelling state interest is demonstrated.* By inserting clear and specific language regarding this right into the Constitution, your Committee intends to alleviate any possible confusion over the source of the right and the existence of it.

Committee of the Whole Rep. No. 15, *supra,* at 1024 (emphasis added).

Based on the clear and unambiguous reports, "a compelling state interest" must exist before the government may intrude into those "certain highly personal and intimate affairs of [a person's] life." The personal decision, therefore, to read or view pornographic material in the privacy of one's own home must be afforded the protection of the Hawaii Constitution article I, section 6 from government interference.

Reading or viewing pornographic material in the privacy of one's own home in no way affects the general public's rights. Anyone who is offended by pornography need not be subjected to it so long as others confine their taste for it to their homes. We accept the eloquent reasoning in *Stanley:*

> It is now well established that the Constitution protects the right to receive information and ideas. *"This freedom [of speech and press] . . . necessarily protects the right to receive . . . ."* This right to receive information and ideas, regardless of their social worth, is fundamental to our free society. Moreover, in the context of this case — a prosecution for mere possession of printed or filmed matter in the privacy of a person's own home — that right takes on an added dimension. *For also fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy.*
>
> .    .    .    .
>
> These are the rights that appellant is asserting in the case before us. He is asserting the right to read or observe what he pleases — the right to satisfy his intellectual and emotional needs in the privacy of his own home. He is asserting the right to be free from state inquiry into the contents of his library. Georgia contends that appellant does not have these rights, that there are certain types of materials that the individual may not read or even possess. Georgia justifies this assertion by arguing that the films in the present case are obscene. But we think that *mere categorization of these films as "obscene" is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments.* Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that *a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.*

394 U.S. at 564-65 (emphasis added and citations omitted) (quoting *Martin v. City of Struthers,* 319 U.S. 141, 143 (1943) ).

## C.

### APPLICATION OF THE HAWAII CONSTITUTION ARTICLE 1, SECTION 6 TO THIS CASE.

It is obvious that an adult person cannot read or view pornographic material in the privacy of his or her own home if the government prosecutes the sellers of pornography pursuant to HRS § 712-1214(1)(a) and consequently bans any commercial distribution. *See Thirty-Seven Photographs,* 402 U.S. at 382 (Black, J., dissenting). In *Carey v. Population Services International,* 431 U.S. 678 (1977), the United States Supreme Court invalidated a state law which restricted the sale of contraceptives to licensed pharmacists and impermissibly infringed on an individual's privacy right to decide about family planning by making contraceptives less accessible to the public.

Because the enforcement of HRS § 712-1214(1)(a) has a similar detrimental impact on privacy rights, State must demonstrate a compelling governmental interest exists to prohibit the sale of pornographic material. State, however, has not met its burden.

State cites to *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, *reh'g denied,* 414 U.S. 881 (1973), to support its contention that there is a legitimate state interest to regulate the commerce in obscene material. This ruling, like that of *Orito,* and *12 200-Ft. Reels of Super 8mm Film,* however, was pursuant to a "rational basis" analysis. The Hawaii State Constitution article 1, section 6, on the other hand, demands "the showing of a compelling state interest." Therefore, unless the State can point to a compelling government interest, the right to privacy is infringed upon by the prohibition against the sale of sexually explicit adult material. Since a person has the right to view pornographic items at home, there necessarily follows a correlative right to purchase such materials for this personal use, or the underlying privacy right becomes meaningless. *See Orito,* 413 U.S. at 146 (Brennan, J., dissenting); *Thirty-Seven Photographs,* 402 U.S. at 381 (Black, J., dissenting).

State also mistakenly cites *State v. Mueller,* 66 Haw. 616, 671 P.2d 1351 (1983), as authority for the proposition that the government may regulate obscenity despite the right to privacy provision. *Mueller,* however, 1) accepted the rationale of *Stanley;* but 2) upheld

the authority of the legislature to prohibit *prostitution* even in the privacy of one's own home, because prostitution was not protected by the right to privacy, and therefore the government was not required to prove a compelling state interest. 66 Haw. at 630, 671 P.2d at 1360. The Hawaii Constitution article I, section 6, by contrast, encompasses the privacy right to read or view pornographic material in one's own home.[2]

Every enactment of the Hawaii Legislature is presumptively constitutional, and the party challenging a statute has the burden of showing the alleged unconstitutionality beyond a reasonable doubt. *State v. Petrie,* 65 Haw. 174, 649 P.2d 381 (1982) (per curiam); *State v. Raitz,* 63 Haw. 64, 621 P.2d 352 (1980). Appellants, though, have proven the unconstitutionality of HRS § 712-1214(1)(a) as applied to the sale of pornographic materials to a person intending to use those items in the privacy of his or her home, based on the Hawaii Constitution article I, section 6.

## VI.

### *CONCLUSION.*

Because of our invalidation of HRS § 712-1214(1)(a) on the specific grounds of this case, we do not reach the question whether our holdings in *State v. Han,* 63 Haw. 418, 629 P.2d 1130 (1981), and *State v. Kam,* 68 Haw. ____, 726 P.2d 263 (1986), required State to present expert opinion testimony and surveys to rebut Appellants' evidence. *See* Comment, *Criminal Law – State v. Kam: Do Community Standards on Pornography Exist?,* 9 U. Haw. L. Rev. 727, 727 (1987). Appellants' convictions are accordingly reversed.

---

[2] We do not determine whether a compelling government interest justifies the ban on certain types of obscenity such as child pornography, "snuff films" (the depiction of actual killings), or bestiality. Nor are we presented with situations involving obtrusive public displays of pornography, the showing of obscenity to a captive audience, or the sale of pornography to minors. *See Pope,* 481 U.S. at ____, 107 S. Ct. at 1927, 95 L. Ed. 2d at 453 (Stevens, J., dissenting). Finally, we do not decide if State may regulate pornography by the zoning of adult businesses. See *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, *reh'g denied,* 429 U.S. 873 (1976); Comment, *Regulating Pornography Through Zoning: Can We "Clean Up" Honolulu?,* 8 U. Haw. L. Rev. 75, 102-31 (1986).

*Jack F. Schweigert (Myer C. Symonds* with him on the briefs), for Defendants-Appellants.

On the amicus curiae brief: *Edward C. Kemper* and *Daniel R. Foley,* for American Civil Liberties Union of Hawaii.

*Lila B. LeDuc,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.