92 P.3d 471

**STATE of Hawai'i, Plaintiff–Appellee**

v.

**Ahn Cong BUI, Defendant–Appellant.**

No. 25976.

Supreme Court of Hawai'i.

June 4, 2004.

Curtis E. Sherwood, on the briefs, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that in a prosecution for possession of burglar's tools, Hawai'i Revised Statutes (HRS) § 708–812(1)(a) (1993), (1) HRS § 708–812(1)(a) is not unconstitutionally vague or overbroad, (2) there was substantial evidence that Defendant–Appellant Ahn Cong Bui (Defendant) knew that at least one of the tools he possessed was "adapted, designed or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by physical taking," and (3) the jury instructions were not insufficient. Accordingly, we affirm the judgment of conviction and sentence of Defendant.

I.

On March 12, 2003, Defendant was charged with unauthorized entry into motor vehicle, HRS § 708–836.5 (Supp.2002),[1] and with possession of burglar's tools, HRS § 708–812(1)(a). The jury found Defendant not guilty of the unauthorized entry charge and guilty of the possession charge. Judgment of conviction and sentence was entered on June 4, 2003. Essentially the evidence adduced at trial and as generally set forth by the prosecution follows.

On Saturday evening, March 1, 2003, at about 10:00 p.m., Alen Kaneshiro parked his black Toyota MR2 on the Ala Wai Boulevard. On March 3, 2003, at about 9:00 a.m., Kaneshiro observed police officers in the area. He saw that his car's rear window was cut out. He spoke to the police officers, and determined that nothing was missing from the car.

1. HRS § 708–836.5, entitled "Unauthorized Entry into Motor Vehicle" provides that

(1) A person commits the offense of unauthorized entry into motor vehicle if the person intentionally or knowingly enters or remains unlawfully in a motor vehicle with the intent to commit a crime against a person or against property rights.

(2) Unauthorized entry into motor vehicle is a class C felony.

On March 3, 2003, Ronald Hosband lived on the tenth floor of a building located at Kahakai Drive. At about 6:00 a.m., while on his lanai, Hosband saw Defendant across the street on Ala Wai Boulevard. Defendant carried a white bag in his left hand. After watching Defendant move up and down the sidewalk, he saw Defendant stop at a small black sports car that was parked. Hosband observed Defendant walk back in the direction from which he had come and then walk back to the sports car. He related that Defendant took a shiny or silvery object out of his right hip pocket and "reached over and cut the rear window out of the car." Hosband then saw Defendant reach into the car "where the window . . . had been." Hosband estimated Defendant's hand was in the car for about five or ten seconds. [*Id.*] Hosband then telephoned "911." Hosband observed Defendant walk back and forth, stopping at a gold colored station wagon twice and at a yellow van. Hosband again telephoned "911." When the police arrived, Hosband identified Defendant as the person he had observed.

Police Officer Kyle Ho (Officer Ho) was dispatched to the area. Officer Ho saw that Defendant had a fanny pack and a white plastic bag. Officer Ho detained Defendant until other officers arrived. Officer David Politsch took the bag from Defendant and examined its contents. Officer Ho saw Officer Politsch take from the bag a pair of gloves, a white ivory knife with a steel blade, a clothes hanger, a screwdriver "with a cut edge," and miscellaneous hand tools.

Following the prosecution's case, Defendant moved for judgment of acquittal on the unauthorized entry charge. Defendant further argued that "as to the burglary tools," there had "been no showing that those tools are actually used in the commission of a burglary." The court denied the motion.

Defendant testified on his own behalf. He said he had "a little financial problem on and off[,]" and would live in his 1990 Cadillac limousine. Defendant's car had been stolen a couple of days before. However, a cab driver friend told him he had seen Defendant's car a short walk from where Defendant worked. Defendant testified that he walked across the street to check his car, after which he came "back [to] borrow some tool that prepare for changing a tire." He borrowed a pair of gloves "from the guy[ ]" so that he would not soil his clothing while changing the tire; a screwdriver, which was necessary to pry open the hubcap and access the "hubcap lock bar;" a "tool with the blue tape [which] was a "hubcap lock bar remover;" and, a ratchet (with an extension) and a socket to remove the wheel's lug nuts. Upon being asked by his counsel the purpose of the knife and whether the knife was his, Defendant responded that he "didn't recall if I borrow that or not." As to the purpose of the coat hanger, Defendant explained that he "just prepare in case that I cannot get in the car through the key I have."

The defense did not object to the jury instructions regarding possession of burglar's tools, or to the verdict form. Following the settlement of jury instructions, the court denied the defense's renewed motion for judgment of acquittal.

■ On appeal, Defendant maintains that (1) as a matter of plain error HRS § 708–812(1)(a) "is unconstitutional on its face and as applied to [Defendant]," (2) "the evidence adduced at trial was insufficient to convict Defendant of the burglary tools charge," and (3) "the jury instructions and verdict form [2] were fatally insufficient."

## II.

### A.

■ As to his first point on appeal, Defendant contends that HRS § 708–812(1)(a) is unconstitutional because it was, *inter alia,* vague and overbroad. "A penal statute is vague if a person of ordinary intelligence cannot obtain an adequate description of the prohibited conduct or how to avoid committing illegal acts." *State v. Kam,* 69 Haw. 483, 487, 748 P.2d 372, 375 (1988). HRS

---

**2.** Inasmuch as Defendant "presents no discernable argument in support of this contention[,] . . . it is our prerogative to disregard this claim."

*State v. Moore,* 82 Hawai'i 202, 206, 921 P.2d 122, 126 (1996).

§ 708–812(1)(a) states that the subject offense is

> knowing[ ] possess[ion of] any *explosive, tool, instrument, or other article adapted, designed, or commonly used* for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking *and the person intends to use* the explosive, tool, instrument, or article, or knows some person intends ultimately to use it, in the commission of the offense of the nature described aforesaid[.]

(Emphases added.) He argues that "burglary tools," as described in the statute, could include anything used in the commission of a burglary. Appellant explains that he "possessed ... a screwdriver, knife, coat hanger and ratchet, but items such as shoes, canes, clothing, etc, could just as easily have fit the statutory definition."

HRS § 708–812(1)(a) is not vague because it describes the proscribed conduct in ordinary and understandable terms. The statute specifies that the items must be "any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense[.]" HRS § 708–812(1)(a). Accordingly, the "explosive, tool, instrument or article" denoted is one which the Defendant knew must have been "adapted, designed, or commonly used for committing or facilitating the commission of an offense[.]" The offense(s) as to which the statute applies are limited and defined as those involving forcible entry into premises or theft by physical taking. Therefore, the use of a shoe, cane or clothing, as posited by Defendant, would not come within the purview of this statute unless the items also satisfied the qualifying language in the statute. Consequently, we conclude a person of ordinary intelligence would be able to ascertain the nature of conduct prohibited.

The statute also adequately informs a person on how to avoid committing the offense. Although items of everyday use may be encompassed within HRS § 708–812(1)(a), the nature of the items is qualified by the requirement that a defendant knows they have been adapted or designed or are of such character as to be commonly used for the prohibited purposes. Moreover, the person must knowingly possess such items and a person cannot be convicted under the statute unless the prosecution proves beyond a reasonable doubt that he intended to use the tools, instruments, or other articles in his possession to commit or facilitate forcible entry into premises or theft by physical taking. *Cf. State v. Lee,* 75 Haw. 80, 103, 856 P.2d 1246, 1259 (1993) (holding that specific intent requirement contained in drug paraphernalia statute was sufficient to meet due process standards under the Hawai'i and Federal constitutions). Therefore, the statute on its face clearly informs a person that a violation of the statute may be avoided so long as the articles are not employed with the culpable intent set forth in the statute. The statute thus notifies a person of ordinary intelligence of what conduct is prohibited.

### B.

As mentioned before, Defendant also contends that HRS § 708–812(1)(a) is overbroad. This court, in *State v. Kane,* 87 Hawai'i 71, 951 P.2d 934 (1998), explained that a defendant who raises an overbreadth claim must establish that he or she is personally affected:

> "The doctrine of overbreadth, although closely related to a vagueness claim, is distinct in that while a statute may be clear and precise in its terms, it may sweep so broadly that constitutionally protected conduct is included in its proscriptions." [*State v.]Gaylord,* 78 Hawai'i [127,] 142, 890 P.2d [1167,] 1182 [ (1995) ]. As an element of its overbreadth analysis, this court has consistently applied the principle that
>
> one who alleges that a statute is unconstitutionally overbroad, other than a statute affecting the freedom of expression, must be directly affected by the claimed overbroad aspects. Put differently, *a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others.*
>
> [*Id.*] (citations, brackets, and internal quotation marks omitted).

*Id.* at 77, 951 P.2d at 940 (some internal citations and quotation marks omitted) (emphasis added). Defendant's challenge to HRS § 708–812(1)(a) is grounded in hypothetical conduct in which he was not involved. Because Defendant was not using a shoe to "kick down a door" or an "article[ ] of clothing" to "punch[ ] out windows" or even credit cards "to pry open locked doors", he cannot succeed in an overbreadth challenge. Furthermore, the reach of the statute is confined to knowing possession of items having the prescribed characteristics and the intent to use the items in a prohibited manner. As a result, the statute does not extend to innocent or lawful conduct. Hence, no overbreadth violation is discernable.

### III.

■ "Every enactment of the Hawai'i Legislature is presumptively constitutional, and the party challenging a statute has the burden of showing the alleged unconstitutionality beyond a reasonable doubt." *Kam,* 69 Haw. at 496, 748 P.2d at 380.[3] As explained above, Appellant has not demonstrated that HRS § 708–812(1)(a) is unconstitutionally vague or overbroad. Consequently, we disagree with Defendant's contentions and hold that HRS § 708–812(1)(a) is not unconstitutional.[4]

### IV.

■ As to his second point, Defendant maintains that (1) "the items in this case (gloves, knife, flashlight, screwdriver, nut remover, clothes hanger, and ratchet) should [not] be considered 'burglar's tools' because they do not fit traditional notions of 'breaking tools' such a bolt-cutters, hacksaws, or crowbars[,]", (2) "the [prosecution] never adduced any evidence that Defendant knew these items were 'adapted, designed or commonly used' to break into 'premises' or to

---

**3.** Defendant's argument that HRS § 708–812(1)(a) is "[u]nconstitutional as [b]eyond the [a]uthority of the Legislature" is without merit. Defendant relies on *State v. Lee,* 51 Haw. 516, 521–22, 465 P.2d 573, 576–77 (1970) for the proposition that "where an individual's conduct, or a class of individual's conduct, does not directly harm others, the public interest is not affected and is not properly the subject of · the police power of the legislature." According to Defendant, HRS § 708–812(1)(a) punishes mere possession of innocent objects and as such, "mere possession of these tools causes no harm" and the legislature should not be able to proscribe such conduct.

However, the commentary to HRS § 708–812(1)(a), explains that "[t]his section provides a vehicle for punishing those who possess or traffic in devices adapted, designed or commonly used in the commission of offenses involving forcible entry or theft by physical taking. The person who possesses the designated type of device with intent to use the same in the proscribed manner is covered[.]" Thus, the statute has a valid purpose in protecting the public's interest and falls within the police power. Defendant argues that "mere possession of 'burglar's tools' causes no harm." However, the statute does not punish those who just "possess burglar's tools." The tools must also have been "adapted, designed and commonly used" in the commission of a crime and the person must have had the intent to use the tools illegally. Consequently, the enactment of HRS § 708–812(1)(a) is not beyond the authority of the Legislature.

**4.** Based on the reading of HRS § 708–812(1)(a) set forth above, Defendant's constitutional argu-

ments regarding restrictions on freedom of thought and movement similarly lack merit. Defendant argues that the statute unconstitutionally restricts his freedom of thought. Specifically, Defendant argues that unlike the attempt statute which provides that a person engage in a substantial step in a course of conduct intended to culminate in the commission of a crime, and that the substantial step be strongly corroborative of the person's criminal intent, HRS § 708–812(1)(a) "simply punished incorrect thought" and not conduct. Defendant, however, was charged with more than having incorrect thoughts. Defendant was not arrested and charged with possession of burglar's tools because he merely "thought" about committing a crime; rather, he was arrested and charged because his conduct and the circumstances surrounding his arrest evinced an intent to enter and/or steal from the vehicle involved.

Defendant also argues that HRS § 708–812(1)(a) "violates the right to privacy in its infringement upon an individual's freedom of movement." Defendant explains that the statute "inhibits movement . . . [because] a homeless person, such as [himself], might feel precluded from walking anywhere at night, lest he be stopped by police and unable to explain to officer's satisfaction his possession of a screwdriver, flashlight or pocketknife." As previously explained the "tools, instruments, and other articles" which may not be possessed are those that have been "adapted, designed, or commonly used" in the commission or furtherance of a crime pursuant to HRS § 708–812(1)(a). Consequently, Defendant's arguments as to violations of freedom of thought and movement are meritless.

commit 'physical thefts[,]' ", and (3) "the circumstantial factors weigh against substantial evidence of such intent." For these arguments, Defendant relies heavily on *State v. Brown*, 97 Hawai'i 323, 37 P.3d 572 (App. 2001).[5]

The test on appeal in reviewing the legal sufficiency of the evidence is whether, when viewing the evidence in the light most favorable to the prosecution, substantial evidence exists to support the conclusion of the trier of fact. *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion." *State v. Silva*, 75 Haw. 419, 432, 864 P.2d 583, 590 (1993) (internal ellipsis and brackets omitted) (quoting *State v. Ildefonso*, 72 Haw. 573, 576–77, 827 P.2d 648, 651 (1992)). "[I]n reviewing whether substantial evidence exists to support a conviction, moreover, due deference must be given to the right of the trier of fact to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced." *State v. Lubong*, 77 Hawai'i 429, 432, 886 P.2d 766, 769 (App.1994) (citations omitted).

## V.

This court has held that " 'proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendants's conduct is sufficient.... Thus, the mind of an alleged offender may be read from his acts, conduct and inferences

fairly drawn from all the circumstances.' " *State v. Batson*, 73 Haw. 236, 254, 831 P.2d 924, 934 (1992) (quoting *State v. Sadino*, 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982)) (brackets omitted); *see State v. Yabusaki*, 58 Haw. 404, 409, 570 P.2d 844, 847 (1977) (explaining that intent may be proved by circumstantial evidence and it may be shown by a reasonable inference arising from the circumstances surrounding the act).

Defendant concedes that when he was arrested he was in possession of a bag with several tools, thus establishing knowing possession of the tools. Second, there was circumstantial evidence[6] adduced at trial that Defendant was aware the knife in his possession was of the sort adapted for the prohibited purposes under the statute. As mentioned, Hosband testified that Defendant kneeled down, reached "over and cut the rear window out of the [black] car[,]" and then crossed the street and began "looking in the windows" of at least two other vehicles. Such testimony provided evidence of an intent to make actual entry into the black vehicle. Officer Ho testified that Defendant's bag contained several tools, including, *inter alia*, a knife with a steel blade. Thus, there was circumstantial evidence that Defendant knew the knife could be adapted for the purpose of forcible entry. The jury also heard Kaneshiro's testimony that the rear window of Kaneshiro's car was in fact cut out. Considering the evidence as a whole, there was substantial evidence to support the conclusion of the jury, that Defendant was in "knowing possession" of at least one tool that was adapted for forcible entry and that De-

---

5. The ICA has indicated that in order for a conviction to be sustained under HRS § 708-812(1)(a), the prosecution is required to show that Defendant (1) knowingly possessed an explosive, tool, instrument, or other article, (2) had knowledge that the explosive, tool, instrument, or other article was "adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking," and (3) had the intent to use the explosive, tool, instrument, or other article to commit or facilitate the commission of an offense involving forcible entry into premises or theft. *Brown*, 97 Hawai'i at 335, 37 P.3d at 584.

6. The court instructed the jury that

there are two types of evidence—direct evidence, such as the testimony of witnesses who assert actual knowledge of a fact, and circumstantial evidence, which permits a reasonable inference of the existence of another fact. Facts may be proved by direct or circumstantial evidence, or by a combination of both direct evidence and circumstantial evidence.

The court further instructed the jury that they "must consider only the evidence which has been presented ... in this case and such inferences therefrom as may be justified by reason and common sense."

fendant intended to use it for that purpose. *See Pone,* 78 Hawai'i at 265, 892 P.2d at 458.

## VII.

 Defendant's third point is that the instructions may have allowed the jury to "surmise[ ] that a screwdriver [is] a tool commonly used to break into premises and that such was within the ken of Defendant" and "the jury could then have derived the other necessary intent element (intent to use) from Appellant's alleged use of the knife, an item not commonly thought of as a 'breaking' tool."

■ "The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Balanza,* 92 Hawai'i 279, 283, 1 P.3d 281, 285 (2000). In view of the elements of the two offenses, evidence as to each may overlap. See *supra.* However, the jury was instructed by the court to consider "[e]ach count and the evidence that applies to that count ... *separately* " and that it need not render "the same verdict" as to each of the counts. (Emphasis added) Hence, the jury was directed to consider each count independently and as to each count to evaluate the evidence that would relate to that charge.

Moreover, the court also instructed the jury that "all twelve jurors must unanimously agree that possession of the same item has been proven beyond a reasonable doubt". This foreclosed the possibility that some jurors may have based their decision on tools different from those considered by other jurors or as Defendant speculates, that the jury imputed knowledge of the characteristics of one tool, i.e. a screwdriver, upon which to base criminal liability for possession of another tool, i.e. a knife. Therefore, we discern no error in the court's instructions. In this regard, we presume that the jurors followed the instructions of the court. See *State v. Webster,* 94 Hawai'i 241, 248, 11 P.3d 466, 473 (2000); *State v. Uyesugi,* 100 Hawai'i 442, 473, 60 P.3d 843, 874 (2002).

## VIII.

Accordingly, the court's June 4, 2003 judgment of conviction and sentence, is affirmed.