245 P.3d 458

**STATE of Hawai'i, Petitioner/Plaintiff–Appellee,**

v.

**Wanda Ruriko MITA, Respondent/Defendant–Appellant.**

No. 29347.

Supreme Court of Hawai'i.

Dec. 21, 2010.

Gary Y. Okuda (Leu & Okuda), Honolulu, on the briefs, for defendant-appellant.

Peter B. Carlisle, Prosecuting Attorney, James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

RECKTENWALD, C.J., NAKAYAMA, J., and Circuit Judge LEE in place of MOON, C.J., recused, and ACOBA, J., dissenting, with whom DUFFY, J., joins.

Opinion of the Court by RECKTENWALD, C.J.

Wanda Ruriko Mita was charged with Animal Nuisance in violation of Revised Ordinances of Honolulu (ROH) § 7–2.3 (1990 & Supp. No. 6, 2–05), which provides that "[i]t is unlawful to be the owner of an animal, farm animal, or poultry engaged in animal nuisance as defined in section 7–2.2[.]" Mita was originally issued a citation that indicated that she committed this offense by owning,

harboring, or keeping two dogs that were barking. Prior to the start of trial, the State also orally charged Mita by using language that tracked the provisions of ROH § 7–2.3. Mita objected that the charge was insufficient because it did not give Mita notice of what type of "animal nuisance" she was being charged with, as that term is defined in ROH § 7–2.2.[1] The District Court of the First Circuit, Honolulu Division (district court)[2] concluded that the charge was sufficient, and convicted Mita after a bench trial.

Mita appealed to the Intermediate Court of Appeals (ICA). In its February 23, 2010 Summary Disposition Order (SDO), the ICA cited *State v. Wheeler*, 121 Hawai'i 383, 219 P.3d 1170 (2009), in concluding that the charge against Mita was insufficient because the definition of the term "animal nuisance" in ROH § 7–2.2 contains an essential element of the offense of animal nuisance, and the offense cannot be understood by a person of common understanding without including that definition. The ICA accordingly vacated the judgment of the district court, and remanded with instructions to dismiss without prejudice.

The State of Hawai'i (State) raises the following question in its application for a writ of certiorari: "Whether the ICA gravely erred as a matter of law and fact in holding that the oral charge of Animal Nuisance was insufficient."

For the reasons set forth below, we conclude that the citation and oral charge, when considered together, gave Mita fair notice of the offense. In contrast to the circumstances in Wheeler, the definition of "animal nuisance" in ROH § 7–2.2 does not create an additional essential element of the offense, and, in any event, is consistent with its commonly understood meaning. Thus, the charge against Mita was sufficient. Accordingly, we reverse the ICA's judgment, and remand this case to the ICA to address the remaining issues raised by Mita, which the ICA did not resolve.

## I. Background

### A. Background Facts

#### 1. Citation and Oral Charge

On June 5, 2008, Mita was issued an "Animal License & Regulation—Complaint & Summons" (citation). The citation, signed "Wanda Mita[,]" stated that Mita "[d]id on/or about this *3* day of *June* Yr *08* at about *1940–2050* did own, harbour or keep (animal description): *Boxers* Name *Roxy/Obie* Color *Brown* . . . at (location): [*Mita's residence address*] and did commit the offense of: . . . animal nuisance-Sec.: *7–2.3 Barking Dog* [.]" Additionally, the citation had a section entitled "Officer's Report" which stated that "Mita was issued a Barking 3rd citation. She was already issued a previous Barking 2 warning citation." The citation also advised Mita of her appearance date in court.

Mita appeared in court on July 17, 2008, represented by counsel, and waived reading of the charge and entered a plea of not guilty.

At the start of trial on August 14, 2008, prior to any witnesses being called, the Deputy Prosecuting Attorney (DPA) read the following charge to Mita: "On or about June 3rd, 2008, in the city and county of Honolulu, state of Hawaii, you as the owner of an animal, farm animal, or poultry engaged in animal nuisance as defined in section 7–2.2, thereby violating section 7–2.3 of the Revised Ordinances of Honolulu."

ROH § 7–2.3 provides as follows:

[ ] **Animal nuisance—Prohibited.** *It is unlawful to be the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7–2.2;* provided, however, that it shall not be deemed to be animal nuisance for purposes of this article if, at the time the animal, farm animal or poultry is making any noise, biting or stinging, a person is trespassing or threatening trespass upon private property in or upon which the animal, farm animal or poultry is situated, or for

---

1. As discussed further *infra,* ROH § 7–2.2 (1990 & Supp. No. 6, 2–05) defines animal nuisance as including several different types of animal behavior.

2. The Honorable Faye M. Koyanagi presided.

any other legitimate cause which teased or provoked said animal, farm animal or poultry.

(Emphasis added).

ROH § 7–2.2 defines "animal nuisance" as follows:

. . . .

"Animal nuisance," for the purposes of this section, shall include but not be limited to any animal, farm animal or poultry which:

(a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property;

(b) Barks, whines, howls, crows, cries or makes any other unreasonable noise as described in Section 7–2.4(c) [3] of this article; or

(c) Notwithstanding the provisions of [Hawai'i Revised Statutes (HRS)] Section 142–75 [governing the duties and liabilities of an owner of a dog that has bitten another person] or any other applicable law, bites or stings a person.

Mita objected to the oral charge:

[ ] Your Honor, if I may make for the record an objection to the arraignment. I do not believe that arraignment is specific enough to put the defendant specifically on notice what part of the—if I may call "barking dog" ordinance she's being charged with. There's [sic] basically four violations or four acts which may constitute a violation of the ordinance. One is whether or not the dog made noise continuously and/or incessantly for a period of ten minutes; that's ordinance section 7–2.2(a); or made noise intermittently for one half-hour or more to the disturbance of any person at any time of day or night; that's ordinance section 7–2.2(a); or bark,

whine, howl, cry, or make other unreasonable noise which interfered with reasonable individual or group activity such as but not limited to communication, work, rest, recreation, or sleep; that's ordinance section 7–2.2 [ (b) ] and incorporating 7–2.4(c); or failed to heed the admonition of a police officer or a special officer of the animal control contractor that the noise was unreasonable and should be stopped; that's ordinance section[s] 7–2.2 [ (b) ] and 7–2.4(c). And it's our position that under *State v. Jendrusch*, 58 Haw. 279, [567 P.2d 1242 (1977),] a 1977 case, we should receive specificity in the arraignment so that we know exactly which of these sections of the ordinance we must defend against.

The DPA argued that the oral charge was sufficient because:

[Mita] is charged under section 7–2.3. 7–2.2 is a definition section, in which it defines animal nuisance, and section 7–2.3 incorporates a general animal nuisance as defined in section 7–2.2; and the State's position would be that the wording of the statute is broad enough to encompass all subsections (a), (b), and (c) listed under animal nuisance.

The DPA offered, however, to read the definition of animal nuisance, but the district court found that a reading was unnecessary and that the arraignment was proper. Mita pled not guilty.

## 2. Evidence at Trial

At trial, the State called two witnesses, both of whom were neighbors of Mita. Both witnesses testified that they heard Mita's dogs barking on the evening of June 3, 2008. The first witness testified that she made a written record of Mita's dogs barking on June 3, 2008 from 7:45 p.m. to 8:50 p.m. She testified that she knew it was Mita's dogs barking by their distinctive bark. The second witness testified that she made a written

---

**3.** ROH § 7–2.4(c) (1990 & Supp. No. 6, 2–05) provides:

Noise is unreasonable within the meaning of this article if considering the nature and the circumstances surrounding the animal nuisance, including the nature of the location and the time of the day or night, it interferes with

reasonable individual or group activities such as, but not limited to, communication, work, rest, recreation or sleep; or the failure to heed the admonition of a police officer or a special officer of the animal control contractor that the noise is unreasonable and should be stopped or reduced.

record of Mita's dogs barking on June 3, 2008 from approximately 7:30 p.m. to 8:45 p.m. She testified that she specifically saw Mita's dogs barking that evening, and could distinguish their bark from that of other dogs in the area.

Following the State's evidence, Mita moved for a judgment of acquittal on six grounds outlined in her Trial Memorandum and Memorandum in Support of Motion for Judgment of Acquittal filed on August 14, 2008, as well as her Supplemental Memorandum in Support of Motion for Judgment of Acquittal filed on August 22, 2008. Relevant to the instant appeal, Mita argued that the charge was insufficient because it only charged Mita with violating ROH § 7–2.3, prohibiting animal nuisance, and did not apprise Mita what specific act contained within the definition of "animal nuisance" in ROH § 7–2.2 she was being charged with. The district court denied the motion, and ruled, inter alia, that the charge was sufficient.

The defense called one witness, who was also a neighbor of Mita. The defense witness testified that she "did not notice any dogs barking" the evening of June 3, 2008, and that if Mita's dogs had been barking, she was "almost certain" that she would have noticed it.

### 3. Renewed motion for judgment of acquittal

After the defense rested, Mita renewed her motion for judgment of acquittal. The district court denied the motion and found Mita guilty of violating ROH § 7–2.3.[4] The district court entered its judgment on August 28, 2008, convicting Mita of violating ROH § 7–2.3 and sentencing Mita to pay a $50 fine. Mita filed her notice of appeal on September 5, 2008.

### B. ICA Appeal

On appeal to the ICA, Mita raised several points of error. She argued that the State failed to prove the following beyond a reasonable doubt: (1) that Mita owned the dogs which were allegedly barking; (2) Mita's reckless state of mind; (3) that the dogs were barking in violation of ROH § 7–2.3; and (4) that a qualified animal control officer had issued Mita the citation. Additionally, Mita argued that the charge was insufficient and that ROH § 7–2.3 is unconstitutionally vague.

Citing to *Wheeler*, a majority of the ICA held in a SDO that the charge was insufficient, and therefore vacated Mita's conviction and sentence and remanded the case to the district court with instructions to dismiss without prejudice. Specifically, the ICA concluded that:

> The offense of Animal Nuisance is not understood by a person of common understanding because the ordinance refers to "an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7–2.2." The term "animal nuisance" is specifically limited to three types of actions which the animal, farm animal, or poultry must commit in order to be considered a violation of ROH § 7–2.3. A violation of ROH § 7–2.3 simply cites another ROH section which contains an essential element that the State must prove to find Mita guilty. This did not provide fair notice to Mita.

The ICA did not address Mita's remaining points of error.

Chief Judge Nakamura dissented, concluding that the oral charge against Mita was sufficient. He distinguished the charge against Mita from that in *Wheeler*, where the defendant was charged with operating a vehicle under the influence of an intoxicant (OVUII).[5] First, Chief Judge Nakamura

---

4. The district court concluded that the State proved beyond a reasonable doubt that Mita's dogs were barking, based on the testimony of the State's witnesses. The district court additionally concluded that the State's witnesses "had a greater opportunity to make these observations and hearing the dogs" than did the defense witness, due to the positioning of the respective properties.

5. As discussed *infra,* the charge in *Wheeler* tracked the language of the relevant statute, HRS § 291E–61 (2007), and alleged that the defendant "did operate or assume actual physical control of a ... vehicle[,]" but did not further include the definition of the term "operate" set forth in HRS § 291E–1 (2007): "to drive or assume actual physical control of a vehicle *upon a public way, street, road, or highway ....*" 121 Hawai'i at

reasoned that, unlike the term "operate" as used in the charge in *Wheeler*, "[t]he statutory definition of 'animal nuisance' does not depart from the commonly understood meaning of the term." Second, he concluded that unlike *Wheeler*, where "the statutory definition of the term 'operate' create[d] an additional essential element" and therefore needed to be alleged, "the statutory definition of 'animal nuisance' does not purport to create an additional essential element for the offense."

Additionally, Chief Judge Nakamura noted that the oral charge "specifically directed Mita to the statutory definition of the term 'animal nuisance'" in ROH § 7–2.2, which "served to further inform and apprise Mita of the nature of the charge against her." He recognized that "[a]lthough including a citation to the offense statute in a charge does not cure a charge that omits an essential element of the offense, it can be argued that a specific reference to the statutory definition, which tells the defendant where to look for additional information, may be considered where the charge already encompasses the essential elements of the offense." Finally, he concluded that pursuant to Hawaiʻi Rules of Penal Procedure (HRPP) Rule 7(a) (2008), cited *infra*, the charge in the instant case consisted of both the oral charge and the citation, and when considered together, they sufficiently alleged the essential elements of the offense of animal nuisance.

386–87, 391, 219 P.3d at 1173–74, 1178 (emphasis in original).

**6.** HRPP Rule 7(a) provides:

(a) **Use of indictment, information, or complaint.** The charge against a defendant is an indictment, an information, or a complaint filed in court, provided that, in any case where a defendant is accused of an offense that is subject to a maximum sentence of less than six months in prison (other than Operating a Vehicle Under the Influence of an Intoxicant) and is issued a citation in lieu of physical arrest pursuant to Section 803–6(b) of the [HRS] and summoned to appear in court, *the citation and an oral recitation of the essential facts constituting the offense charged as set forth in Rule 5(b)(1), shall be deemed the complaint, notwithstanding any waiver of the recitation.*
(Emphasis added).
HRPP Rule 5(b)(1) provides, in relevant part: *Arraignment.* In the district court, if the offense charged against the defendant is other than a felony, the complaint shall be filed and

On March 16, 2010, the ICA filed its Judgment on Appeal. The State timely filed its application on June 10, 2010. Mita did not file a response.

## II. Standard of Review

" 'Whether [a charge] sets forth all the essential elements of [a charged] offense . . . is a question of law[,]' which we review under the de novo, or 'right/wrong,' standard.' " *Wheeler*, 121 Hawaiʻi at 390, 219 P.3d at 1177 (citation omitted).

## III. Discussion

The State argues that the ICA erred for two reasons. First, the State argues that the ICA erred because the citation and oral charge should be considered together under HRPP Rule 7(a),[6] and when doing so, the charge sufficiently alleges all the essential elements of the offense of animal nuisance. Second, the State argues that "the ICA's reliance upon *Wheeler* in holding the oral charge insufficient was misplaced" because "the charge here, unlike the charge in *Wheeler*, (1) on its face is 'readily comprehensible to persons of common understanding[,]' and, (2) cited the essential elements of the offense and incorporated a statutory reference to the offense's definitional section."

For the reasons set forth below, we conclude that the charge against Mita was sufficient.

proceedings shall be had in accordance with this section (b). . . . *If a defendant is issued a citation in lieu of physical arrest pursuant to Section 803–6(b) of the [HRS] and summoned to be orally charged as authorized by Rule 7(a) of these rules, a copy of the citation shall be filed and proceedings shall be had in accordance with this section (b) . . . .* When the offense is charged by a citation and the defendant is summoned to be orally charged, arraignment shall be in open court or by video conference when permitted by Rule 43. The arraignment shall consist of a recitation of the essential facts constituting the offense charged to the defendant and calling upon the defendant to plead thereto.
(Some emphasis added).
The maximum sentence for a violation of the offense of animal nuisance is thirty days imprisonment. ROH § 7–2.10(b) (1990 & Supp. No. 6, 2–05).

## A. The Oral Charge Was Sufficient Because it Gave Notice to Mita of the Nature and Cause of the Accusation

Article I, section 14 of the Hawaiʻi Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" "The criminal process begins when the accused is charged with a criminal offense, if it is not a felony, by complaint or oral charge." *State v. Sprattling*, 99 Hawaiʻi 312, 317, 55 P.3d 276, 281 (2002) (citing HRPP Rule 5(b)(1)). "[T]he sufficiency of the charging instrument is measured, inter alia, by 'whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]'" *Wheeler*, 121 Hawaiʻi at 391, 219 P.3d at 1178 (quoting *State v. Wells*, 78 Hawaiʻi 373, 379–80, 894 P.2d 70, 76–77 (1995)) (some brackets in original, some added). "In other words, the oral charge must be worded in a manner such 'that the nature and cause of the accusation [could] be understood by a person of common understanding[.]'" *Sprattling*, 99 Hawaiʻi at 318, 55 P.3d at 282 (quoting *State v. Israel*, 78 Hawaiʻi 66, 70, 890 P.2d 303, 307 (1995)) (brackets in original). The relevant inquiry, therefore, is whether or not the charge provided the accused with fair notice of the essential elements. *Wheeler*, 121 Hawaiʻi at 395, 219 P.3d at 1182. This court has recognized that "'[a] charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process.'" *Id.* at 391, 219 P.3d at 1178 (quoting *State v. Jendrusch*, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)).

As noted above, the ICA concluded that, pursuant to this court's holding in *Wheeler*, the charge in the instant case was insufficient. However, *Wheeler* is distinguishable. In *Wheeler*, the defendant was orally charged with operating a vehicle under the influence of an intoxicant (OVUII). 121 Hawaiʻi at 386–87, 219 P.3d at 1173–74. The charge

tracked the language of the relevant statute, HRS § 291E–61, and alleged that the defendant "did operate or assume actual physical control of a motor vehicle while under the influence of alcohol...." *Id.* However, the charge did not further include the definition of the term "operate," which was defined in HRS § 291E–1 as "to drive or assume actual physical control of a vehicle *upon a public way, street, road, or highway* ...." *Id.* at 391, 219 P.3d at 1178 (emphasis in original). This court held that HRS § 291E–1 establishes an attendant circumstance of the proscribed conduct, i.e., that the offense of OVUII occur on a public way, street, road, or highway. *Id.* at 392–93, 219 P.3d at 1179–80. Therefore, since the location of the proscribed conduct established by HRS § 291E–1 was an attendant circumstance, this court held that it was an essential element of the offense of OVUII that should have been included within the charge against the defendant. *Id.* (citing HRS § 702–205 (1993)).[7]

This court emphasized that although the charge tracked the language of the statute, the term "operate" as used in HRS § 291E–61 "is neither 'unmistakable' nor 'readily comprehensible to persons of common understanding'" and therefore did not provide the defendant with fair notice of that aspect of the charge. *Id.* at 394–95, 219 P.3d at 1181–82 (citation omitted). Specifically, this court concluded that the common understanding of the term "operate" "does not geographically limit where the conduct must take place." *Id.* at 394, 219 P.3d at 1181. Therefore, merely including the term "operate" in the charge, without providing the defendant with notice that his conduct must have occurred "upon a public way, street, road, or highway," was insufficient. *Id.* Additionally, this court recognized that "none of the other information in the charge provided [the defendant] with fair notice of that element" where, for example, the charge "did not contain any specification of where the alleged offense occurred, other than it took place in the City

---

7. HRS § 702–205 provides: "The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)."

and County of Honolulu." *Id.* at 395, 219 P.3d at 1182.

There are two significant factors present in the instant case that were not present in *Wheeler*, thus making it readily distinguishable: (1) the definition of "animal nuisance" in ROH § 7–2.2 does not create an additional essential element of the offense; and (2) in any event, the definition of "animal nuisance" is consistent with its commonly understood meaning and therefore Mita had fair notice of the offense charged. Thus, the oral charge against Mita, which tracked the language of ROH § 7–2.3, sufficiently alleged all of the essential elements of the offense of animal nuisance.

■ Under the Hawai'i Penal Code, the essential elements of an offense are (1) conduct; (2) attendant circumstances; and (3) results of conduct. *Wheeler*, 121 Hawai'i at 391, 219 P.3d at 1178 (citing HRS § 702–205 (1993)). In *Wheeler*, because the definition of the term "operate" created an attendant circumstance, which is an essential element of the charge pursuant to HRS § 702–205, this court concluded that the oral charge must provide fair notice of that element. *Id.* at 392–93, 219 P.3d at 1179–80. Here, Mita was charged with violating ROH § 7–2.3, which provides, in relevant part, that "[i]t is unlawful to be the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7–2.2." Therefore, in order for a person to be found guilty of violating ROH § 7–2.3 the State must prove (1) that person is the owner of an animal, farm animal or poultry which (2) engaged in animal nuisance.

The oral charge against Mita directly tracked ROH § 7–2.3 and read as follows: "On or about June 3rd, 2008, in the city and county of Honolulu, state of Hawaii, you as the owner of an animal, farm animal, or poultry engaged in animal nuisance as defined in section 7–2.2, thereby violating section 7–2.3 of the Revised Ordinances of Hon-

olulu." The charge did not further allege the definition of "animal nuisance" as found in ROH § 7–2.2. However, this did not render the oral charge insufficient because the definition does not create additional essential elements of the offense of animal nuisance.[8]

The ICA concluded that "[t]he term 'animal nuisance' is specifically limited to three types of actions which the animal, farm animal, or poultry must commit in order to be considered a violation of ROH § 7–2.3." However, the definition of "animal nuisance" in ROH § 7–2.2 does not create elements in addition to those already required by ROH § 7–2.3, but instead provides an inclusive, rather than exclusive, list of examples of what the term may include:

"Animal nuisance," for the purposes of this section, *shall include but not be limited to* any animal, farm animal or poultry which:

(a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property;

(b) Barks, whines, howls, crows, cries or makes any other unreasonable noise as described in Section 7–2.4(c) of this article [, quoted *supra* note 3]; or

(c) Notwithstanding the provisions of HRS Section 142–75 or any other applicable law, bites or stings a person.

(Emphasis added).

Thus, the charge against Mita is distinguishable from *Wheeler* because unlike the term "operate," the definition of the term "animal nuisance" does not create any additional attendant circumstances or other essential elements of the offense of animal nuisance. *Wheeler* does not require that the State provide statutory definitions in every charge which tracks the language of a statute that includes terms defined elsewhere in the

---

8. We respectfully disagree with the dissent's contention that *State v. Nobriga*, 10 Haw.App. 353, 873 P.2d 110 (1994), *overruled on other grounds by State v. Maelega*, 80 Hawai'i 172, 907 P.2d 758 (1995), stands for the proposition that ROH § 7–2.2 contains additional essential elements of the offense of animal nuisance. *Nobriga* did not address whether ROH § 7–2.2 sets forth additional essential elements, and clearly stated that the *"offense"* of animal nuisance "is set forth in [ROH] § 7–2.3 (1990)[.]" *Id.* at 355, 873 P.2d at 112 (emphasis added).

code. Requiring the State to do so would render charges unduly complex, in contravention of the policy reflected in HRPP Rule 7(d) that "[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged." Rather, as this court concluded in *Wheeler*, the State need only allege the statutory definition of a term when it creates an additional essential element of the offense, and the term itself does not provide a person of common understanding with fair notice of that element. *See Wheeler*, 121 Hawai'i at 393, 219 P.3d at 1180 ("In general, '[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.' ") (citations omitted) (brackets in original).

The second significant factor discussed by this court when analyzing the sufficiency of the charge in *Wheeler* was whether the term "operate" gave the defendant fair notice of the requirement that the proscribed conduct occur on a public way, street, road, or highway. 121 Hawai'i at 393–96, 219 P.3d at 1181–83. Specifically, this court considered whether the statutory definition of the term "operate" is "readily comprehensible to persons of common understanding[,]" namely whether a person would understand that to "operate" means not only that a person "perform[s] a function, or operation" but also includes the additional requirement of doing so "upon a public way, street, road, or highway." *Id.* This court contrasted the situation in *Wheeler* with that in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). In *Hamling*, the petitioners challenged the sufficiency of an indictment which charged them with the "use of the mails to carry an obscene book," arguing that although the indictment tracked the language of the statute, it did not provide them with adequate notice because it failed to include the definition of the term "obscenity." *Id.* at 91, 117, 94 S.Ct. 2887. The United States Supreme Court rejected that argument, holding that "obscenity" "is a term sufficiently definite in legal meaning to give a defendant

notice of the charge against him." *Id.* at 118–19, 94 S.Ct. 2887.

We emphasized that *Hamling* was distinguishable from the circumstances in *Wheeler* because "the term 'obscenity' itself provided a person of common understanding with some notice of the nature of the prohibited conduct. In contrast, 'operate' has been statutorily defined ... in a manner that does not comport with its commonly understood definition." *Wheeler*, 121 Hawai'i at 394, 219 P.3d at 1181. Specifically, this court recognized that the common understanding of the term "operate" "does not geographically limit where the conduct must take place." *Id.* Therefore, merely including the term "operate" in the charge, without providing the defendant with notice that his conduct must have occurred "upon a public way, street, road, or highway[,]" rendered the charge insufficient. *Id.* at 394–96, 219 P.3d at 1181–83.

The charge in the instant case, like that in *Wheeler*, tracked the language of the relevant ordinance, ROH § 7–2.3. However, in contrast to *Wheeler*, "animal nuisance" is consistent with its commonly-understood meaning and provides a defendant with notice of what is being charged. The dictionary definitions of both "animal" and "nuisance" support this conclusion. The term "animal" is defined as "[a]ny living creature other than a human being[,]" *Black's Law Dictionary* 102 (9th ed.2009) or "a mammal as distinguished from a bird, reptile, or other nonmammal." *Webster's 3rd International Dictionary of the English Language Unabridged* 85 (3d ed.1967) (hereinafter "*Webster's*"). The term "nuisance" is defined as "[a] condition, activity, or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property[,]" *Black's Law Dictionary* at 1171, or "an offensive, annoying, unpleasant, or obnoxious thing or practice: a cause or source of annoyance that although often a single act is usu[ally] a continuing or repeated invasion or disturbance of another's right[,]" *Webster's* at 1548, or "a person, thing, or circumstance causing inconvenience or annoyance[,]" *The New Oxford American Dictionary* 1175 (2001).

Thus, a person of common understanding would have fair notice that "animal nuisance" could include the various examples of conduct provided in ROH § 7–2.2: that the animal, for example, (1) continuously makes noise for at least ten minutes or intermittently for a half hour or more so as to disturb others, (2) barks, whines, howls, crows, cries or makes other unreasonable noises, or (3) bites or stings a person, all of which would cause damage, annoyance or inconvenience to others. Unlike *Wheeler*, where it could not be said that a person would understand that the term "operate" necessarily means that they must do so on a *public* street or roadway, there is nothing contained within the definition of "animal nuisance" in ROH § 7–2.2 that cannot be discerned from its common usage. Rather, like in *Hamling*, 418 U.S. at 102, 94 S.Ct. 2887, where the United States Supreme Court held that the term "obscene" provided the petitioners with sufficient notice, the common meaning of the term "animal nuisance" is sufficiently broad enough to encompass the component parts of its definition. The charge against Mita which tracked the language of ROH § 7–2.3 without further defining "animal nuisance" was therefore sufficient.

Moreover, in contrast to *Wheeler*, the charge against Mita contained other information that provided her with fair notice of the offense charged. Pursuant to HRPP Rule 7(a), when a defendant is accused of an offense that is subject to a maximum sentence of less than six months imprisonment, and the defendant is issued a citation rather than placed under arrest, the citation and the oral charge are considered together to be the complaint. HRPP Rule 7(a).[9] Here, the maximum sentence for a violation of the offense of animal nuisance is thirty days imprisonment. ROH § 7–2.10(b). Therefore, when analyzing the sufficiency of the charge of animal nuisance against Mita, this court considers both the citation issued to Mita, as well as the oral charge against her. When

doing so, it is clear that all the essential elements of the charge were properly alleged.

As noted above, the citation, signed by Mita, stated that Mita "[d]id on/or about this *3* day of *June* Yr *08* at about *1940–2050* did own, harbour or keep (animal description): *Boxers* Name *Roxy/Obie* Color *Brown* . . . at (location): [*Mita's residence address*] and did commit the offense of: . . . animal nuisance-Sec.: *7–2.3 Barking Dog*[.]" The citation also had a section entitled "Officer's Report" which stated that "Mita was issued a Barking 3rd citation. She was already issued a previous Barking 2 warning citation." Mita's citation therefore put her on notice that she was cited for violating ROH § 7–2.3 (her third citation) because her two dogs were barking. Thus, when the DPA orally charged Mita prior to trial, alleging that she was the owner of an animal that engaged in animal nuisance, Mita had fair notice that the charge was due to her dogs, Roxy and Obie, barking in a manner that disturbed others. Accordingly, the ICA erred in concluding that the charge was insufficient. *Cf. State v. Baker*, 55 Haw. 621, 622–23, 525 P.2d 571, 572 (1974) (holding that the indictment charging defendant with forgery in the second degree was sufficient, although inarticulately drawn due to technical errors in its wording, because it *"provided the [defendant] with sufficient facts to put him on reasonable notice of the charges against him"*) (emphasis added).

In sum, the charge against Mita, comprised of both the citation and oral charge, provided her with fair notice of the offense of animal nuisance. The significant factors in *Wheeler* which caused this court to conclude that the charge was insufficient are not present here. While the charge in *Wheeler* contained a hidden element, the statutory definition of the term "animal nuisance" does not create an additional essential element of the offense of animal nuisance, and, in any event, is consistent with the commonly understood

---

**9.** HRPP Rule 7(a) states in relevant part: "[I]n any case where a defendant is accused of an offense that is subject to a maximum-sentence of less than six months in prison . . . and is issued a citation in lieu of physical arrest pursuant to Section 803–6(b) of the [HRS] and summoned to

appear in court, the citation and an oral recitation of the essential facts constituting the offense charged as set forth in Rule 5(b)(1), shall be deemed the complaint, notwithstanding any waiver of the recitation." *See also supra*, note 6.

meaning of the term. Accordingly, the charge against Mita was sufficient.

As noted above, the ICA did not address any of the other issues raised by Mita in her opening brief. Additionally, neither party has requested that they be addressed here. Accordingly, in light of our holding that the ICA erred in concluding that the charge against Mita was insufficient, we remand this case to the ICA to address Mita's remaining issues.

## IV. Conclusion

For the foregoing reasons, we conclude that the charge against Mita was sufficient and remand this case to the ICA to address the remaining issues raised in Mita's opening brief.

Dissenting Opinion by ACOBA, J., in which DUFFY, J., joins.

I respectfully dissent on two grounds. First, the oral charge herein failed to " 'sufficiently allege all of the essential elements of the offense charged[.]' " *State v. Wheeler*, 121 Hawai'i 383, 391, 219 P.3d 1170, 1178 (2009) (quoting *State v. Jendrusch*, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)). In other words, the charge in the instant case, "fail[ed] to state an offense," *State v. Elliott*, 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994), and "contain[ed] within it a substantive jurisdictional defect[,]" thereby rendering "any subsequent trial, judgment of conviction, or sentence a nullity[,]" *State v. Cummings*, 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003) (citing *State v. Israel*, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995)) (other citations omitted).

Second, the charge in this case failed to "sufficiently apprise[ ] [Respondent/Defendant–Appellant Wanda Ruriko Mita (Respondent) ] of what ... she [had to] be prepared to meet[.]" *State v. Wells*, 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995) (internal quotation marks, citations and brackets omitted). A charge defective in that regard cannot sustain a conviction, for " 'that would constitute a denial of due process.' " *Wheeler*,

121 Hawai'i at 391, 219 P.3d at 1178 (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244).

I would therefore affirm the judgment of the Intermediate Court of Appeals (ICA), entered pursuant to its February 23, 2010 Summary Disposition Order (SDO), vacating the August 28, 2008 judgment of the District Court of the First Circuit, Honolulu Division (the court).

## I.

In this case, Respondent was issued an "Animal License & Regulation—Complaint & Summons" (Citation). The Citation stated that "on/or about th[e] 3 day of JUNE 08[, Respondent] ... did own, harbour or keep (animal description): BOXERS ... at (location) ... and did commit the offense of: ANIMAL NUISANCE–SEC: 7–2.3 BARKING DOG...." On August 14, 2008, Respondent was arraigned before the court by Petitioner/Plaintiff–Appellee State of Hawai'i (Petitioner) on the charge of Animal Nuisance, Revised Ordinances of Honolulu (ROH) Section 7–2.3 (2005).

> Respondent was orally charged as follows:
> On or about June 3rd, 2008, in the [C]ity and [C]ounty of Honolulu, [S]tate of Hawai'i, you as the owner of an animal, farm animal, or poultry *engaged in animal nuisance* [1] *as defined in section 7–2.2, thereby violating section 7–2.3 of the [ROH ].*[2]

(Emphasis added.) After the charge was read, Petitioner asked Respondent, "Do you understand the charge?" Respondent then objected to the arraignment on the ground that Petitioner had failed to identify which of "the four acts [under ROH § 7–2.2]" Respondent would need to "defend against." Respondent entered the following objection into the record.

> Your Honor, if I may make for the record an objection to the arraignment. I do not believe that the arraignment is specific enough to put [Respondent] specifically on notice what part of the—if I may call "barking dog" ordinance she's being charged with. *There's basically four vio-*

---

1. *See infra* page 7 for the definition of "animal nuisance" as set forth in ROH § 7–2.2.

2. *See infra* page 7 for the text of ROH § 7–2.3.

lations or four acts which may constitute a violation of the ordinance. One is whether or not the dog made noise continuously and/or incessantly for a period of ten minutes; that's ordinance section 7–2.2(a); or made noise intermittently for one half-hour or more to the disturbance of any person at any time of day or night; that's ordinance section 7–2.2(a); or bark, whine, howl, cry or make other unreasonable noise which interfered with reasonable individual or group activity such as but not limited to communication, work, rest, recreation, or sleep; that's ordinance section 7–2.2(a) and incorporating 7–2.4(c); or failed to heed the admonition of a police officer or a special officer or the animal control contractor that the noise was unreasonable and should be stopped; that's ordinance section 7–2.2(a) and 7–2.4(c). And its our position that under State v. Jendrusch, 58 Haw. 279 [567 P.2d 1242], a 1977 case, we should receive specificity in the arraignment so that we know exactly which of we know exactly which of these sections of the ordinance we must defend against.

Petitioner's position was that because the term "animal nuisance" in ROH § 7–2.3 itself was so broad, Petitioner did not need to charge Respondent with violating a specific subsection of ROH § 7–2.2. Petitioner stated:

> Your honor, [Petitioner's] position, [Respondent] is charged under Section 7–2.3. 7–2.2 is a definition section, in which it defines animal nuisance, and section 7–2.3 incorporates a general animal nuisance as defined in section 7–2.2; and [Petitioner's] position would be that the wording of the statute is broad enough to encompass all subsections (a), (b), and (c) listed under animal nuisance. But if the [c]ourt would like me to read the definition of animal nuisance, I will be—I would be happy to do that.

The court ruled in favor of Petitioner in determining that the definition of animal nuisance in ROH § 7–2.2 did not enumerate additional elements of the offense and therefore, although the charge omitted any definition of animal nuisance, it was sufficient. The court stated that

[it would] have to agree with [Petitioner's] position. [Petitioner was] arraigned on [ROH § ] 7–2.3, which is the prohibition section, and that does not incorporate the definition section, which is not a prohibition. So, therefore, [the court] find[s] that the arraignment is proper.

At the close of trial, Respondent moved for a judgment of acquittal on several grounds, one of which was that "the charge constituted a general 'Animal Nuisance' charge, and thus failed to adequately apprise [Respondent] of the specific prohibited conduct." The court denied Respondent's motion, ruling that "the charge was sufficient and the ordinance not vague."

On appeal to the ICA, Respondent reiterated her original arguments. In issuing its SDO, a majority of the ICA concluded that the charge was insufficient, vacated the August 28, 2008 judgment of the court, and remanded to the court with instructions to dismiss without prejudice. State v. Mita, No. 29347, 2010 WL 617628, at *2 (App. Feb. 23, 2010) (SDO). In a dissent to the majority opinion, Chief Judge Nakamura stated that he would have concluded that, taking into consideration both the oral charge and Citation, the charge against Respondent was sufficient. Id. at *6 (Nakamura, J., dissenting).

On February 23, 2010, Petitioner filed an application for writ of certiorari (Application), seeking review of the SDO issued by the ICA. In its Application, Petitioner argues, inter alia, that the ICA gravely erred in concluding that the charge in this case was insufficient. The majority agrees with Petitioner and vacates the ICA judgment, asserting that the oral charge provided "fair notice of the offense" because (1) the definition of animal nuisance under ROH § 7–2.2 "does not create an additional essential element of the offense," and therefore, did not need to be included in the charge, and (2) the definition of animal nuisance in ROH § 7–2.2 "is consistent with its commonly understood meaning." 124 Hawai'i at 386, 245 P.3d at 459. Hence, the majority maintains that Petitioner needed to prove only that (1) Respondent was the owner of an animal, farm

animal or poultry which (2) engaged in animal nuisance, in its commonly-understood sense. *Id.* at 124 Hawai'i at 391, 245 P.3d at 464.

## II.

Because Respondent disputed the oral charge immediately after it was read, the question as to whether the charge sufficiently set forth all of the essential elements of the offense is a question of law, which this court reviews de novo. *Wheeler*, 121 Hawai'i at 390, 219 P.3d at 1177.

## III.

## A.

This court has held that a charge must "sufficiently allege all of the essential elements of the offense[,]" regardless of whether the charging instrument is "an oral charge, information, indictment or complaint[.]" *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244 (citations omitted).

*In other words, an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity. See Israel*, 78 Hawai'i at 73, 890 P.2d at 310 (quoting *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374 (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244)); *Elliott*, 77 Hawai'i at 312, 884 P.2d at 375 ("the omission of an essential element of the crime charged is a defect in substance rather than form" (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244)); *Territory v. Koa Gora*, 37 Haw. 1, 6 (1944) (failure to state an offense is a "jurisdictional point"); *Territory v. Goto*, 27 Haw. 65, 102 (1923) (Peters, C.J., concurring) ("[f]ailure of an indictment[,] [complaint, or oral charge] to state facts sufficient to constitute an offense against the law is jurisdictional[;] ... an indictment[,] [complaint, or oral charge] ... is essential to the court's jurisdiction," (brackets added));

**3.** HRS § 702–205 provides:
   **§ 702–205. Elements of an Offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

[Hawai'i Revised Statutes (HRS) ] § 806–34 (1993) (explaining that an indictment may state an offense "with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are necessary[,]" *inter alia*, "to show that the court has jurisdiction, and to give the accused reasonable notice of the facts").

*Cummings*, 101 Hawai'i at 142, 63 P.3d at 1112 (emphasis added).

The essential elements of an offense are "conduct," "attendant circumstances," and the "results of conduct." HRS § 702–205 (1993).[3] This court has stated that " 'any circumstances defined in an offense that are neither conduct nor the results of conduct would, by default, constitute attendant circumstances elements of the offense.' " *State v. Murray*, 116 Hawai'i 3, 8, 169 P.3d 955, 960 (2007) (quoting *State v. Aiwohi*, 109 Hawai'i 115, 127, 123 P.3d 1210, 1222 (2005) (brackets, internal quotation marks, and internal citation omitted)).

ROH § 7–2.3 provides:

Sec. 7–2.3   Animal Nuisance—Prohibited.

*It is unlawful to be the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7–2.2;* provided, however, that it shall not be deemed to be animal nuisance for purposes of this article if, at the time the animal, farm animal or poultry is making any noise, biting or stinging, a person is trespassing or threatening trespass upon private property in or upon which the animal, farm animal or poultry is situated, or for any other legitimate cause which teased or provoked said animal, farm animal, or poultry.

(Emphasis added.)

ROH § 7–2.2 in turn defines "animal nuisance" in several ways:

(a) Are specified by the definition of the offense, and
(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

"Animal nuisance," for the purposes of this section, shall include but not be limited to any animal, farm animal or poultry which:

(a) *Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more* to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property;

(b) *Barks, whines, howls, crows, cries or makes any other unreasonable noise as described in Section 7–2.4(c)* of this article; or

(c) Notwithstanding the provisions of HRS Section 142–75 or any other applicable law, bites or stings a person.

(Emphases added).

ROH § 7–2.4(c) defines "unreasonable noise" as follows:

(c) *Noise is unreasonable within the meaning of this article if considering the nature and the circumstances* surrounding the animal nuisance, including the nature of the location and the time of the day or night, it interferes with reasonable individual or group activities such as, but not limited to, communication, work, rest, recreation or sleep; *or* the failure to heed the admonition of a police officer or a special officer of the animal control contractor that the noise is unreasonable and should be stopped or reduced.

(Emphases added.)

Under the foregoing, Petitioner was required to prove, as elements of the offense, that (1) Respondent was an owner of "an animal," (2) which "engage[d] in animal nuisance[,]" and (3) "animal nuisance as defined in [ROH] Section 7–2.2" occurred. ROH § 7–2.3. The conduct element is the owning of an animal. The result of the conduct is that the animal engaged in animal nuisance. What constitutes "animal nuisance" under ROH § 7–2.3 must be ascertained by reference to ROH § 7–2.2 inasmuch as ROH § 7–2.3 specifically references ROH § 7–2.2 as to

the meaning of that term. ROH § 7–2.2(a) and (b) encompass four specific alternative acts, each of which would constitute "animal nuisance." Because each act under ROH § 7–2.2 would amount to "animal nuisance," each of those acts is an alternative attendant circumstance of the offense. Thus, Petitioner was required to charge one or more of the specific acts separately defined as "animal nuisance" under ROH § 7–2.2 and was required to establish that element by proof beyond a reasonable doubt.

In the instant case, the charge failed to state any act under ROH § 7–2.2 in which the animal was alleged to have engaged. The majority maintains that the Citation, which may be construed in conjunction with the oral charge, "put [Respondent] on notice that she was cited for violating ROH § 7–2.3 ... because her two dogs were barking." 124 Hawai'i at 393, 245 P.3d at 466. Under the Hawai'i Rules of Penal Procedure (HRPP) Rule 7(a), the oral charge can be considered in conjunction with the Citation.[4] However, considering the Citation, Respondent was charged only with (1) being the owner (2) of a "barking dog." Mere barking would not constitute "animal nuisance" inasmuch as the ordinance designates specific circumstances for how barking constitutes "animal nuisance."

As set forth under ROH § 7–2.2 and § 7–2.4, incorporated by reference thereby, the attendant circumstance of how barking was specifically a nuisance could be established only by proof beyond a reasonable doubt that (1) the dog had barked "continuously and/or incessantly for a period of 10 minutes," or (2) the dog had barked "intermittently for one-half hour or more to the disturbance of any person," or (3) the barking was "unreasonable ... as described in Section 7–2.4(c)[,]" that is, that it "interfere[d] with reasonable individual or group activities such as, but not limited to, communication, work, rest, recreation or sleep[,]" or (4) the dog had barked notwithstanding "the admonition of a police officer or a special officer of the animal con-

---

4. HRPP Rule 7(a) provides that

in any case where a defendant is accused of an offense that is subject to a maximum sentence of less than six months in prison[,] ... and is issued a citation in lieu of physical arrest ... and summoned to appear in court, the citation and an oral recitation of the essential facts constituting the offense charged ... shall be deemed the complaint[.]

trol contractor that the [barking was] unreasonable and should be stopped or reduced."[5] Therefore, one or more of these attendant circumstances had to be included in the charge, but having been omitted, the charge in the instant case was insufficient to allege an offense. *Elliott*, 77 Hawai'i at 311–12, 884 P.2d at 374–75 (stating that a charge which fails to allege all essential elements of the offense " 'amounts to a failure to state an offense, and a conviction based upon it cannot be sustained' " (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244)).

## B.

*State v. Nobriga*, 10 Haw.App. 353, 873 P.2d 110 (1994), *overruled on other grounds* by *State v. Maelega*, 80 Hawai'i 172, 907 P.2d 758 (1995), supports the foregoing construction. On March 12, 1992, Nobriga, who lived on property upon which he kept approximately twenty-five to fifty roosters, was cited by an assistant investigator for the Hawaiian Humane Society for "Animal Nuisance," ROH § 7–2.3. *Id.* at 355, 873 P.2d at 112. The *Nobriga* court construed the same ordinance at issue in the instant case.[6]

At trial, "[a]n animal control officer for the Hawaiian Humane Society testified that he had [previously] issued a warning citation to [the d]efendant" which notified the defendant "that his roosters were creating too much noise." *Id.* at 356, 873 P.2d at 112. The animal control officer also specifically advised the defendant that "the roosters could not 'make noise for ten minutes constantly or thirty minutes intermittently[,]' " and that the defendant had "responded that he would try to comply with the law." *Id.* (citation omitted). Additionally, an assistant investigator testified "that on March 12, 1992, he monitored roosters on [the d]efendant's prop-

erty crowing continuously for a twenty-minute period between 7:25 a.m. and 8:10 a.m." and that "[t]he [d]efendant's neighbor also testified that on March 12, 1992, she could not sleep because [the d]efendant's roosters crowed continuously from two o'clock in the morning." *Id.*

On appeal, the defendant argued that his conviction should be overturned because the State had failed to prove an essential element of the offense of Animal Nuisance; namely, that the keeping of roosters was not a permitted use of the defendant's property under ROH § 7–2.4(a). *Id.* The *Nobriga* court noted that

> a specific exception to the offense of "Animal Nuisance" is established in ROH § 7–2.4(a) (1990), which provides[,] "Nothing in this article applies to animals, farm animals or poultry raised, bred or kept as a commercial enterprise or for food purposes where commercial kennels or the keeping of livestock is a permitted use."

*Id.* at 355–56, 873 P.2d at 112 (formatting altered).

The ICA explained that, under the Hawai'i Penal Code, the State has the initial burden of negativing statutory exceptions to an offense only if the exceptions are incorporated into the definition of the offense. *Id.* at 359, 873 P.2d at 113. However, the ICA stated that if a statutory exception to an offense constitutes a separate and distinct defense, the State has the burden of disproving the defense beyond a reasonable doubt only if evidence of the defense is first raised by the defendant. *Id.*

According to the *Nobriga* court, "the general prohibition against Animal Nuisance[ ] [is] set forth in ROH §§ 7–2.2 *and* 7–2.3,

---

5. Whether any of these acts could be subject to constitutional challenge is not raised in this case and therefore, is not discussed.

6. The *Nobriga* court explained that

> [ROH] § 7–2.3 (1990), provides, in pertinent part, as follows:
>> It is unlawful to be the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7–2.2[.]
> The term "animal nuisance" is defined in ROH § 7–2.2 (1990), partly, as follows:

> "Animal nuisance," for the purposes of this section, shall include but not be limited to any animal, farm animal or poultry which: (a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property[.]

> 10 Haw.App. at 355, 873 P.2d at 112 (brackets in original).

[and] does not incorporate the ROH § 7–2.4 exceptions into the definition of the offense." *Id.* (emphasis added). Because the exception is located in a separate and distinct section of the ordinance, the ICA explained that the defendant had the initial burden of bringing himself within the exception by presenting facts constituting the defense. *Id.* Ultimately, the ICA concluded that because the defendant offered no evidence constituting his defense, the State was not required to present any evidence disproving that defense beyond a reasonable doubt. *Id.* at 359, 873 P.2d at 113–14.

In *Nobriga*, the ICA read ROH § 7–2.3 with ROH § 7–2.2 as constituting the offense of animal nuisance. Accordingly, ROH § 7–2.2(a) was identified as the specific subsection of ROH § 7–2.2 that the defendant violated. *See id.* at 356, 873 P.2d at 112. The foregoing establishes that ROH § 7–2.2 must be referred to in order to constitute a violation under ROH § 7–2.3, and, thus, it would not have been sufficient to convict the defendant for simply owning or harboring "noisy roosters." Thus, the court's conclusion and the majority's assertion in the instant case that the prohibition against "Animal Nuisance" is set forth solely under ROH § 7–2.3, and that ROH § 7–2.2 is merely a non-exhaustive list of examples of what "animal nuisance" may include, is contrary to *Nobriga*'s determination that "the general prohibition against Animal Nuisance[ ] [is] set forth in ROH §§ 7–2.2 *and* 7–2.3[.]" *Id.* at 359, 873 P.2d at 113 (emphasis added).

## IV.

Respondent maintains that *Wheeler* is similar to the instant case. In that case, the defendant was orally charged with Operating a Vehicle Under the Influence of an Intoxicant (OVUII) as follows:

[Wheeler], on or about May 31st, 2007, in the City and County of Honolulu, State of Hawaii, you did *operate* or assume actual physical control of a motor vehicle while under the influence of alcohol in amounts sufficient to impair your normal mental faculties and your ability to care for yourself and guard against casualty, and thereby committing the offense of Operating a

Vehicle Under the Influence of Intoxicants in violation of 291E–61(a)(1) of the [HRS].

. . . .

121 Hawai'i at 386–87, 219 P.3d at 1173–74 (some brackets in original) (emphasis added). Although the charge in *Wheeler* tracked the language of the statute, it did not include the statutory definition of the term "operate," defined as " 'dr[iving] or assum[ing] actual physical control of a vehicle *upon a public way, street, road or highway.*' " *Id.* at 391, 219 P.3d at 1178 (quoting HRS § 291E–1 (2007) (emphasis in original)). This court stated that "the conduct element of [OVUII]" requires one to "either drive or assume actual physical control of a vehicle. HRS § 291E–61(a)(1)." *Id.* However, according to *Wheeler*, the statutory definition of the offense established an attendant circumstance of *where* the conduct must occur. *See id.* at 393, 219 P.3d at 1180. Because the charge omitted that attendant circumstance, this court determined that the charge was insufficient. *See id.*

Likewise, in the instant case, the conduct element of the ordinance required Respondent to be the owner of a dog that engaged in "animal nuisance." As in *Wheeler*, the term "animal nuisance" used in the conduct element is defined. Similarly, the ordinance definitions of "animal nuisance" were attendant circumstances that establish *how* barking would constitute animal nuisance and, thus, prohibited conduct under the ordinance. Analogous to *Wheeler*, although those acts are listed in the ordinance, none were included in the charge. Because, then, the charge in this case alleged only that the dog had been barking, which is not in and of itself "animal nuisance" under ROH § 7–2.2, the charge was insufficient.

Petitioner maintains that *Wheeler* is unlike this case because, in *Wheeler*, the statutory definition of the term "operate" was not readily comprehensible to persons of common understanding inasmuch as the definition specifically required that the conduct occur on a public road; but in the instant case, "animal nuisance" is readily comprehensible to persons of common understanding, and, thus, the language tracking the statute was sufficient. In *Wheeler*, this court

distinguished the case before it from *Hamling v. United States*, 418 U.S. 87, 118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), where the Supreme Court determined that the term "obscenity" was "sufficiently definite in legal meaning to give a defendant notice of the charge against him." The majority asserts that, as in *Hamling*, a charge of "animal nuisance" provided Respondent with sufficient notice because "the common meaning of the term 'animal nuisance' is sufficiently broad enough to encompass the component parts of its definition" in ROH § 7–2.2. 124 Hawai'i at 393, 245 P.3d at 466.

To the contrary, the error here is even more egregious than that in *Wheeler*, for the term "nuisance" does not have a commonly-understood meaning, nor is the term "sufficiently definite in legal meaning to give a defendant notice of the charge against him." *Hamling*, 418 U.S. at 118, 94 S.Ct. 2887. The majority posits that "nuisance" is commonly understood and is defined as, *inter alia*, " 'an offensive, annoying, unpleasant, or obnoxious thing or practice[,]' " 124 Hawai'i at 392, 245 P.3d at 465 (quoting *Webster's 3rd Int'l Dictionary of the English Language Unabridged* 85 (3d ed.1967)) (brackets omitted); or "a person, thing, or circumstance causing inconvenience or annoyance[,]" *id.* at 392, 245 P.3d at 465 (quoting *The New Oxford American Dictionary* 1175 (2001)) (brackets omitted); or something which "caus[es] [an] inconvenience or annoyance," *id.* (quoting *The New Oxford American Dictionary* at 1175) (brackets omitted). But the majority's arguments fail under *Wheeler*'s rationale.

Manifestly, the majority's so called "commonly-understood" definition of "nuisance" is not limited to barking for specific time increments, or barking under particularly described circumstances. The majority's asserted definition of the term "nuisance" is so broad as to encompass the acts proscribed under ROH § 7–2.2. In *Wheeler*, this court noted that the commonly-understood meaning of the term operate "does not geographically limit where the conduct must take place." 121 Hawai'i at 394, 219 P.3d at 1181. Because the statutory definition of operate in HRS § 291E–1 was narrower and more specific than the commonly-understood meaning of operate, this court concluded that the statutory definition was "neither 'unmistakable' nor 'readily comprehensible to persons of common understanding' " in the term "operate" included in the charge. *Id.* (quoting *State v. Merino*, 81 Hawai'i 198, 214, 915 P.2d 672, 688 (1996)) (other citations omitted).

Applying the foregoing rationale, because ROH § 7–2.2 defines "animal nuisance," as it pertains to barking, more narrowly and specifically than the purported commonly-understood meaning of "nuisance," the term "animal nuisance" in and of itself is "neither 'unmistakable' nor 'readily comprehensible to persons of common understanding.' " *Id.* (quoting *Merino*, 81 Hawai'i at 214, 915 P.2d at 688) (other citations omitted). Therefore, the charge must include a relevant and narrower definition from among those set forth under ROH § 7–2.2, rather than a mere reference to "animal nuisance." Otherwise, the term "animal nuisance" alone would not be readily comprehensible to persons of common understanding.

Moreover, the definition of the term "nuisance" in fact cautions that "[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all people, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie." *Black's Law Dictionary* 1096 (8th ed.2004) (citation omitted). Thus, the term "animal nuisance" is not "sufficiently definite in legal meaning to give a defendant notice of the charge against him." *Hamling*, 418 U.S. at 118, 94 S.Ct. 2887.

## V.

Additionally, on appeal, Respondent argued that the charge "did not adequately inform her of the nature of the charge being brought against her." This court has stated that a defendant must have knowledge of the specific crime for which he or she is charged, including the "time, place, and circumstances[,] . . . the person (if any) against whom, and the thing (if any) in respect to which the offense was committed[.]" *Cummings*, 101 Hawai'i at 142–43, 63 P.3d at

1112–13 (citing HRS § 806–34 (1993)). "In particular, 'where the definition of an offense includes generic terms, it is not sufficient that the [charge] shall charge the offense in the same generic terms as in the definition; but it must state the species and descend to particulars.'" *Israel*, 78 Hawai'i at 73, 890 P.2d at 310 (quoting *Russell v. United States*, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)) (brackets and ellipses omitted).[7]

Because the definition of the offense includes a generic term such as "nuisance," "it is not sufficient" to "charge the offense in the same generic terms as in the definition[.]" *Id.* (internal quotation marks and citation omitted). Due process required notice to Respondent of the specific act for which she was being charged. Because, then, a "barking dog" could be encompassed by any of the four acts included within subsections (a) and (b) of ROH § 7–2.2, the charge had to "state the species and descend to particulars[,]" *id.*, by indicating which one or more of the four alternative acts was being charged. Otherwise, Respondent would be "relegated to a position from which ... [she would need to] speculate as to what crime ... [she would] have to meet in defense." *Id.* at 71, 890 P.2d at 308 (internal quotation marks and citation omitted).

In this case, the charge failed to inform Respondent of *how* her dog's barking amounted to "animal nuisance" as defined by ROH § 7–2.2. Respondent could not be certain whether Petitioner intended to prove, for example, that the dog had barked "intermittently for one-half hour or more to the disturbance of any person," that the barking had "interfere[d] with reasonable individual or group activities[,]" or that the dog had barked notwithstanding the prior "admonition of a police officer or a special officer of the animal control contractor that the [barking was] unreasonable and should be stopped

or reduced." ROH §§ 7–2.2 & 7–2.4. Consequently, Respondent was relegated to a position from which she had to speculate as to what act or acts she would have to meet in defense. *Israel*, 78 Hawai'i at 71, 890 P.2d at 308.

### VI.

### A.

With respect to the majority's first assertion, *see supra* 124 Hawai'i at 395, 245 P.3d at 468, the majority maintains that the phrase "shall include but not be limited to" in ROH § 7–2.2 refers to the subsections following, and that the various descriptions of "animal nuisance" stated in those subsections merely constitute "an inclusive, rather than exclusive, list of examples of what the term may include[.]" 124 Hawai'i at 391, 245 P.3d at 464. But this construction of the ordinance by the majority renders ROH § 7–2.3 unconstitutionally vague.

" '[T]he void-for-vagueness' doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *State v. Beltran*, 116 Hawai'i 146, 151, 172 P.3d 458, 463 (2007) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (internal citation omitted)). In other words, a statute is unconstitutionally vague if (1) "a person of ordinary intelligence cannot obtain an adequate description of the prohibited conduct or how to avoid committing illegal acts[,]" *State v. Kam*, 69 Haw. 483, 487, 748 P.2d 372, 375 (1988); *see also State v. Sturch*, 82 Hawai'i 269, 274, 921 P.2d 1170, 1175 (App.1996) (stating that " '[s]tatutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited

---

7. In *Israel*, the court affirmed an order of the circuit court dismissing one count of a multicount complaint against the defendant. 78 Hawai'i at 67–68, 890 P.2d at 304–05. The dismissed count had charged the defendant "with knowingly possessing or intentionally using or threatening to use a firearm while engaged in the commission of a felony[,]" *id.* at 67, 890 P.2d at 304, but failed to "specify which felony [the defendant] [ ] allegedly committed at the time he possessed, used, or threatened to use a firearm[,]" *id.* at 68, 890 P.2d at 305. This court determined that "[t]he generic term 'felony' did not, indirectly or by inference, inform [the defendant] that the underlying felony was Terroristic Threatening in the First Degree." *Id.* at 70, 890 P.2d at 307. It was determined that the nature and cause of the accusation could not be understood by a person of common understanding from reading the complaint itself. *Id.*

so that he or she may choose between lawful and unlawful conduct'" (quoting *State v. Gaylord,* 78 Hawai'i 127, 138, 890 P.2d 1167, 1178 (1995) (quoting *State v. Tripp,* 71 Haw. 479, 482, 795 P.2d 280, 282 (1990)))), and (2) it "encourage[s] arbitrary and discriminatory enforcement[,]" *Beltran,* 116 Hawai'i at 151, 172 P.3d at 465 (citations omitted), by "fail[ing] to provide an explicit standard of enforcement," thereby leaving law enforcement officers, judges, and jurors "free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case[,]" *State v. Bloss,* 62 Haw. 147, 150, 613 P.2d 354, 356–57 (1980) (citing *State v. Kaneakua,* 61 Haw. 136, 597 P.2d 590 (1979)) (other citations omitted).

In *Beltran,* this court held that an ordinance which prohibited, *inter alia,* "camping without a permit,"[8] was unconstitutionally vague. 116 Hawai'i at 147, 172 P.3d at 459. The ordinance itself did not define "camping," but a definition was contained in the Rules and Regulations which were also promulgated by the City and County (Rule). The Rule defined "camping" as follows:

> "Camping" means the use of public park for living accommodation purposes such as sleeping activities, or making preparations to sleep (including the laying down of bedding for the purpose of sleeping), or storing personal belongings, or making any fire, or using any tents or shelter or other structure or vehicle for sleeping or doing any digging or earth breaking or carrying on cooking activities. *The above-listed activities constitute camping when it reasonably appears, in light of the circumstances, that the participants, in conducting these activities, are in fact using the area as a living accommodation regardless of the intent of the participants or the nature of any other activities in which they may also be engaging.*

*Id.* at 148–49, 172 P.3d at 460–61 (emphases omitted and emphasis added.) This court determined that the phrase, "it reasonably appears, in light of the circumstances," rendered the statute unconstitutionally vague because that standard (1) "require[d] the actor to view his or her conduct as a third person would, rather than informing the actor as to how to avoid violating the regulation[,]" and (2) was "susceptible of subjective application among persons enforcing the regulation[.]" *Id.* at 154, 172 P.3d at 466. *Beltran* said that, in sum, that phrase "[did] not instruct the actor on what is permissible or impermissible, but [was] broadly all encompassing, and [ ] invite[d] ad hoc and subjective resolution of the regulation policy by the police officer." *Id.*

Likewise, inasmuch as the phrase "shall include but not be limited to" is said by the majority to be "broadly all encompassing[,]" the ordinance fails to "instruct the actor on what is permissible or impermissible" under the ordinance. *Id.* If, as the majority suggests, the definition of "animal nuisance" in ROH § 7–2.2 does not create an element of the offense, but only a non-exclusive "list of examples of what the term *may* include[,]" 124 Hawai'i at 391, 245 P.3d at 464 (emphasis added), there would be no limits as to what acts "may" constitute "animal nuisance." Under the phrase "shall include but not be limited to," how is a person to "know whether his [or her] dog's barks[,]" *State v. Ferraiolo,* 140 Ohio App.3d 585, 748 N.E.2d 584, 585 (2000), or other conduct constitutes "animal nuisance?" For example, under the majority's construction, a person would not know whether his or her dog, for example, had engaged in "animal nuisance" by emitting a foul odor; wearing a bell on its collar; sniffing, growling, or barking at someone who passes by; chasing after someone; or rolling around in the middle of the sidewalk, all of which could conceivably constitute an offense of the ordinance under the definition of "animal nuisance" espoused by the majority. As a result, the term "animal nuisance" alone, or the phrase "shall include but not be limited to," are "subjective term[s] that offer[ ] virtually no guidance to the [animal]

---

**8.** The ordinance, ROH § 10–1.3(a)(2), stated in pertinent part:

> Sec. 10–1.3 Permits.

> (a) Required. Any person ... shall first obtain a permit from the department for the following uses:
>
> ....
>
> (2) Camping[.]

owner who must comply with this legislation." *Id.* at 587. Persons of ordinary intelligence would be left to speculate as to all of the possible ways in which their animal could cause them penal liability under the ordinance.

### B.

The ordinance, as construed by the majority, is also susceptible to subjective application by those enforcing the ordinance and invites ad hoc and discriminatory enforcement of the law. Under the majority's reading of ROH § 7–2.2, enforcement of the term "animal nuisance" alone, or of the phrase "shall include but not be limited to" unstated acts, becomes highly subjective. As previously indicated, the majority asserts that the definition of the term "nuisance" includes, *inter alia,* "a person, thing, or circumstance causing inconvenience or annoyance[.]" 124 Hawai'i at 392, 245 P.3d at 465 (quoting *The New Oxford American Dictionary* at 1175). But what may be an "inconvenience" or an "annoyance" to one person is not necessarily an "inconvenience" or an "annoyance" to another. Thus, law enforcement officers and judges are now "free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.'" *Bloss,* 62 Haw. at 150, 613 P.2d at 356–57 (internal quotation marks and citations omitted).

*Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), is relevant. In *Coates,* the challenged ordinance made it unlawful "for three or more persons to assemble, except at a public meeting of citizens, on any of the sidewalks, street corners, vacant lots, or mouths of alleys, and there conduct themselves in a manner *annoying* to persons passing by, or occupants of adjacent buildings." *Id.* at 612 n. 1, 91 S.Ct. 1686 (emphasis added). The Court struck down the ordinance as unconstitutionally vague, reasoning that the statute subjected the exercise of the right of assembly to an unascertainable standard and that therefore, "men of common intelligence [had to] necessarily guess at its meaning." *Id.* at 614, 91 S.Ct. 1686 (internal quotation marks and citation omitted). The Court explained that "the ordinance [was] vague, not in the

sense that it require[d] a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct [was] specified at all" inasmuch as "[c]onduct that annoys some people does not annoy others." *Id.*

According to the Court, although a city may prohibit certain conduct "through the enactment and enforcement of ordinances[,]" "[the city] cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed." *Id.* Thus, the ordinance "contain[ed] an obvious invitation to discriminatory enforcement" and was therefore unconstitutional. *Id.* at 616, 91 S.Ct. 1686.

Pertinent to the instant case, "[a] single bark, howl, or yelp may be considered [an 'inconvenience,'] unreasonable[, or 'annoying'] by someone if it occurs at an inopportune time[ ]" or to someone with particular sensitivities. *Ferraiolo,* 748 N.E.2d at 584. Thus, under the majority's construction, the ordinance is not "directed with reasonable specificity toward the conduct to be prohibited." *Id.* As indicated, in endorsing a broad and all-encompassing definition of "animal nuisance" and affirming the "shall include but not be limited to" language in ROH § 7–2.2, "no standard of conduct is specified at all" under the ordinance. *Coates,* 402 U.S. at 614, 91 S.Ct. 1686. A violation of the ordinance "may entirely depend upon whether or not a[n officer]" determined the animal's acts were a "nuisance" based on his or her own subjective concept of the term. *Id.* The majority's construction of the ordinance thus renders it unconstitutional.

### C.

However, a penal statute or ordinance should be read "'in such a manner as to preserve its constitutionality. To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will strive to focus the scope of the provision to a narrow and more restricted construction.'" *State v. Bayly,* 118 Hawai'i 1, 7–8, 185 P.3d 186, 192–93 (2008) (quoting *State v.*

*Bates,* 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997)).

The subsections of ROH § 7–2.2, which specifically define animal nuisance, set forth specific prohibited acts. That one is charged simply as an owner of an animal that engaged in animal nuisance does not provide notice of culpable conduct. In other words, charging Respondent with mere "animal nuisance" was insufficient inasmuch as (1) such a charge does not, in and of itself, describe any of the culpable acts enumerated in the ordinance and (2) such charge relegated Respondent to a position from which she had to speculate as to the acts that she would need to defend against. However, it would seem apparent that ROH § 7–2.2 sets forth alternative attendant circumstances, i.e., the various specific acts of an animal that constitute "animal nuisance." [9] Construed in a more restricted manner, the ordinance would escape a challenge of vagueness under the construction of the ordinance imposed by the majority.[10]

### VII.

In my view, the definition of "animal nuisance" in ROH § 7–2.2 sets forth alternative attendant circumstances as elements of the offense of "Animal Nuisance," that must be charged under ROH § 7–2.3. Additionally, the term "animal nuisance" alone is not susceptible of a commonly-understood meaning so as to dispense with the definition of that term in ROH § 7–2.2. Therefore, the charge in the instant case did not provide fair notice of the offense for which Respondent was prosecuted. Finally, in concluding that the term "animal nuisance" need not be defined because the phrase "shall include but not be limited to" in ROH § 7–2.2 creates a broad and all-encompassing definition of "animal nuisance," the majority has rendered the or-

dinance unconstitutionally vague. For the foregoing reasons, I respectfully dissent.

---

9. Because dog barking is covered by one or more of the specific acts listed under ROH § 7–2.2, the charge would not be insufficient if the prosecution had charged that the dogs had engaged in one of the acts specifically listed.

10. The majority maintains that the phrase "shall include but not be limited to" establishes a non-exhaustive list of examples of animal nuisance exemplified by the subsections of ROH § 7–2.2.

*See* 124 Hawai'i at 391, 245 P.3d at 464. However, that language could be construed as applying to the clause which immediately follows it— "any animal, farm animal or poultry." Under that interpretation, ROH § 7–2.2 would be read to provide that "[a]nimal nuisance[ ]" ... shall include but not be limited to *any animal, farm animal or poultry which"* engages in one or more of the specifically defined acts listed in the subsections of ROH § 7–2.2.